# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

========================

## ON MOTION FOR REHEARING

========================

## NO. 03-03-00460-CR

**James Thomas LaPointe, Appellant**

**v.**

**The State of Texas, Appellee**

### FROM THE DISTRICT COURT OF WILLIAMSON COUNTY, 368TH JUDICIAL DISTRICT NO. 03-111-K368, HONORABLE BURT CARNES, JUDGE PRESIDING

## O P I N I O N

In order to address concerns raised in the State's motion for rehearing, we withdraw our judgment and opinion issued on March 17, 2005 and substitute this opinion abating the appeal.

Appellant James Thomas LaPointe was convicted by a jury of one count of aggravated kidnapping, one count of assault-family violence second, and three counts of aggravated sexual assault. *See* Tex. Pen. Code Ann. § 20.04 (West 2003); *id.* §§ 22.01, 22.021 (West Supp. 2004).[1] His wife Kara LaPointe was the victim. James[2] argues that the district court erred because:

---

[1] Although certain statutes implicated in this case have been amended since the events at issue, the amendments do not affect our analysis, and we will cite to the current versions of all statutes for convenience.

[2] To avoid confusion we will refer to the appellant and victim by their first names.

(1) it barred James and James's counsel from attending an *in camera* hearing to determine the admissibility of evidence of the alleged victim's previous sexual conduct; (2) it refused to allow James's counsel to make offers of proof or bills of exception regarding evidence of the victim's previous sexual conduct; (3) it excluded evidence of the victim's previous sexual conduct and other evidence; (4) it erroneously admitted evidence of extraneous acts by James; (5) the evidence is factually insufficient to support his conviction. We agree that the district court erred in barring James's counsel from the *in camera* hearing. However, the nature of the district court's error presents unique circumstances in which the error prevents the proper presentation of James's issues regarding the *in camera* hearing and the exclusion of evidence of Kara's past sexual conduct. *See* Tex. R. App. P. 44.4(a)(1). We, therefore abate the appeal and direct the trial court to correct the error by conducting a hearing consistent with this opinion. *See* Tex. R. App. P. 44.4(b).[3]

## BACKGROUND

James and Kara LaPointe, were married in March 2000 following the birth of their son, J.L. In July 2001, following repeated marital difficulties, the couple separated, and Kara and J.L. moved in with Kara's mother.

On October 4, 2001, Kara and J.L. were at her mother's house in Williamson County when James arrived and apparently began to argue with Kara. Kara testified at trial that she told James to leave, but James refused to leave and assaulted her by pulling out some of her hair,

---

[3] The State has filed a Motion to Strike Appendix to Appellant's Brief. We overrule the State's motion. However, we recognize that the appendices are not part of the record and we have not relied upon them in deciding the appeal. *See Till v. Thomas*, 10 S.W.3d 730, 734 (Tex. App.—Houston [1st Dist.] 1999, no pet.).

throwing her to the floor, and stepping on her hand and head. She stated that James forced her to remove her clothes, told her to lie down on the bed, and forced her to perform oral sex on him and allow him to perform oral sex on her. He then forced her to have vaginal sex with him.

Kara testified that James threatened her with a pair of pinking shears and made Kara and J.L. leave with him. After the three arrived at James's apartment in Travis County, James again performed oral sex on Kara and forced her to perform oral sex on him. Kara stated that James also inserted a water bottle into her vagina. She testified that James forced her to engage in sexual intercourse with him again that evening. While the two were asleep that night, James handcuffed their wrists together.

Kara testified that the next morning, James, Kara, and J.L. returned to Kara's mother's house in Williamson County, where James again forced Kara to engage in sexual intercourse with him. Kara testified that James forced her to write a letter conveying custody of J.L. to James; James then took Kara to a notary public, where Kara signed the letter in front of the notary. James then returned Kara to her mother's house, and ordered Kara to remain quiet about the events that had just occurred; he then left with J.L.

After James left, Kara told her mother what had happened; Kara's mother then called the Leander Police Department. Leander police obtained an arrest warrant for James and a search warrant for his Travis County apartment. On the morning of October 6, Leander and Austin police officers entered James's apartment and discovered James hiding with J.L. in the apartment's attic. The police also discovered a water bottle and a pair of pinking shears in the apartment.

James was indicted and tried on one count of aggravated kidnapping, one count of assault-family violence second, and three counts of aggravated sexual assault. *See* Tex. Pen. Code Ann. §§ 20.04, 22.01, 22.021. After a four-day trial, a jury convicted James on all five counts and sentenced James to twenty years' imprisonment for the count of assault-family violence second and life imprisonment for the remaining four counts. This appeal followed.

## DISCUSSION

**Rule 412**

Evidence of an alleged victim's past sexual conduct is admissible in a prosecution for sexual assault only under limited circumstances. Tex. R. Evid. 412(b). The Texas Rules of Evidence provide:

> (b) Evidence of Specific Instances. In a prosecution for sexual assault or aggravated sexual assault, or attempt to commit sexual assault or aggravated sexual assault, evidence of specific instances of an alleged victim's past sexual behavior is also not admissible, unless:
>
> (1) such evidence is admitted in accordance with paragraphs (c) and (d) of this rule;
>
> (2) it is evidence:
>
> (A) that is necessary to rebut or explain scientific or medical evidence offered by the State;
>
> (B) of past sexual behavior with the accused and is offered by the accused upon the issue of whether the alleged victim consented to the sexual behavior which is the basis of the offense charged;
>
> (C) that relates to the motive or bias of the alleged victim;

4

> (D)  is admissible under Rule 609 [regarding impeachment by evidence of conviction of a crime]; or
>
> (E)  that is constitutionally required to be admitted; and
>
> (3)  its probative value outweighs the danger of unfair prejudice.
>
> (c)  Procedure for Offering Evidence.  If the defendant proposes to introduce any documentary evidence or to ask any question, either by direct examination or cross-examination of any witness, concerning specific instances of the alleged victim's past sexual behavior, the defendant must inform the court out of the hearing of the jury prior to introducing any such evidence or asking any such question.  After this notice, the court shall conduct an in camera hearing, recorded by the court reporter, to determine whether the proposed evidence is admissible under paragraph (b) of this rule.  The court shall determine what evidence is admissible and shall accordingly limit the questioning.  The defendant shall not go outside these limits or refer to any evidence ruled inadmissible in camera without prior approval of the court without the presence of the jury.
>
> (d)  Record Sealed.  The court shall seal the record of the in camera hearing required in paragraph (c) of this rule for delivery to the appellate court in the event of an appeal.

Tex. R. Evid. 412(b)-(d).  Rule 412 is commonly referred to as the "rape shield" rule.  *See Southwell v. State*, 80 S.W.3d 647, 649 (Tex. App.—Houston [1st Dist.] 2002, no pet.).

**The District Court's *In Camera* Procedure**

At trial, James sought to introduce evidence of Kara's previous sexual behavior.  The district court concluded that rule 412(c) required that only the judge, alleged victim, and court reporter needed to be present at the *in camera* hearing.  The district court proposed that James's counsel would submit specific areas of inquiry for the judge to discuss with Kara.  The district court

would then determine the admissibility of any evidence of previous sexual behavior based on the court's own questioning of Kara outside the presence of James or his attorney.

James's counsel requested the right to examine Kara with respect to several subject areas. First, James sought to introduce evidence of Kara's previous sexual behavior with James upon the issue of whether Kara consented to the sexual behavior in question. At trial, Kara testified that James handcuffed her wrist to his while they slept. James maintained that they had previously used a pair of handcuffs—which Kara admitted she had given him—in consensual sexual activity, and that this evidence was admissible to show that Kara had consented to the events at issue here.

Second, James sought to examine Kara regarding their prior use of objects such as vibrators in consensual sexual activity. James argued this evidence was admissible to show that Kara consented to the sexual activity at issue here, which allegedly involved the use of a water bottle.

Third, James sought to introduce evidence of Kara's recent sexual encounter with a friend[4] to present an alternative explanation for Kara's injuries and rebut evidence offered by the State, which included evidence of bruising and vaginal trauma to Kara.

Fourth, James sought to introduce evidence regarding Kara's possible motive or bias. James's counsel explained this argument to the district court as follows:

> I believe that one of the possible motives or explanations for this case is that . . . the alleged victim had engaged in conduct which would jeopardize her ability to keep her child, that she by the admissions of the State, what they have allowed me to get in,

---

[4] Kara testified that she had consensual sexual intercourse with a boyfriend on October 3, 2001. DNA testing revealed that Kara and the boyfriend could not be excluded as contributors to a mixture of DNA found on the water bottle collected from James's apartment. James was excluded as a possible contributor.

she had engaged in sexual activities with some people, [naming the complainant's friend]. I believe there are other people that she has done that with and that those other sexual escapades would lead to problems in a custody case. Whether she would win them or not, I don't think is material, but would lead to a problem or a set of problems that would be posed in a custody case regarding the child, [J.L.]. And as a result of that, that having signed off on the letter, it is plausible that she . . . now realizes she's done wrong, and she is putting together a rape story for—to avoid a child custody matter.

We have reviewed the sealed transcript of the *in camera* hearing. In the hearing, the district court briefly discussed the first two areas of inquiry with Kara and ruled that inquiry regarding her previous sexual activity with James was inadmissible. The judge ruled that evidence regarding intercourse between Kara and her friend was already in the record, so he would not entertain further questioning in that area.[5] Finally, the judge ruled that any evidence of the final area of inquiry—bias by Kara stemming from a desire to gain custody of J.L.—was not admissible.

James argues that the *in camera* hearing described in rule 412(c) requires at a minimum that a defendant's counsel be afforded the opportunity to examine the alleged victim regarding specific instances of previous sexual conduct. *See* Tex. R. Evid. 412(c). James argues that the district court's failure to allow James's counsel to attend the hearing constitutes reversible constitutional error because the procedure denied James his constitutional right to confront witnesses and denied him his constitutional right to the assistance of counsel. *See* U.S. Const. amend. VI ("In

---

[5] The district court also held a private hearing with hospital nurse Kathleen Gann to determine whether Kara had made statements regarding sexual conduct with other men in the days prior to the incident in question that could have explained her injuries. The nurse testified that although Kara acknowledged having sexual intercourse with another man on October 3, she did not tell the nurse, nor did the nurse ask, if objects were used during that sexual encounter that could have caused Kara's injuries.

all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him . . . and to have the Assistance of Counsel for his defence."); Tex. Const. art. I, § 10 (accused "shall have the right of being heard by himself or counsel, or both, [and] shall be confronted by the witnesses against him"). In a separate issue, James asserts that the district court's refusal to allow him to make a bill of exception regarding the alleged victim's previous sexual conduct constitutes reversible error.

**Construction and Application of Rule 412**

The central question in the case before us is whether rule 412(c) requires a trial court to afford a defendant and his counsel an opportunity to be present and cross-examine the alleged victim at an *in camera* hearing. In making this determination, we examine principles of statutory construction as well as the effect of the district court's interpretation of the rule on James's constitutional rights.

In analyzing a rule of evidence, it is appropriate to employ principles of statutory construction. *See Ludwig v. State*, 931 S.W.2d 239, 241 (Tex. Crim. App. 1996). The starting point for statutory analysis is the text of the relevant provision. *Ex parte Kuester*, 21 S.W.3d 264, 266 (Tex. Crim. App. 2000); *State v. Laird*, 38 S.W.3d 707, 712 (Tex. App.—Austin 2000, pet. ref'd). Undefined words in a statute are ordinarily given their plain meaning, unless the statute shows that they were used in some other sense. *Daniels v. State*, 754 S.W.2d 214, 219 (Tex. Crim. App. 1988); *State v. Wofford*, 34 S.W.3d 671, 680 (Tex. App.—Austin 2000, no pet.). Every word of a statute is presumed to have been used for a purpose, and every word excluded must also be presumed to

8

have been excluded for a purpose. *Cameron v. Terrell & Garrett, Inc.*, 618 S.W.2d 535, 540 (Tex. 1981).

The language in question provides: "[T]he court shall conduct an *in camera* hearing, recorded by the court reporter, to determine whether the proposed evidence is admissible under paragraph (b) of this rule." Tex. R. Evid. 412(c). The crucial phrase is "*in camera* hearing." Because neither "*in camera*" nor "hearing" are defined in either the Texas Rules of Evidence or the Texas Penal Code, we will use their plain meaning in analyzing the requirements of rule 412(c). *See Daniels*, 754 S.W.2d at 219.

"Hearing" is defined as: "1. A judicial session, usu[ally] open to the public, held for the purpose of deciding issues of fact or of law, sometimes with witnesses testifying." *Black's Law Dictionary* 725 (7th ed. 1999). "*In camera*" is defined as: "1. In the judge's private chambers. 2. In the courtroom with all spectators excluded." *Id.* at 763. "Though this phrase usually refers to a judge's chambers, it may also refer to a courtroom from which all spectators are excluded." Bryan A. Garner, *Dictionary of Modern Legal Usage* 428 (2d ed. 1995).

"*In camera* hearing," therefore, denotes a judicial session held either in the judge's chambers or in the courtroom with all spectators excluded.[6] But nothing about the exclusion of outside *spectators* from a hearing implies that a judge could exclude the parties altogether and have a private conservation with a witness. Indeed, federal rule 412 provides for an *in camera* hearing on the admissibility of a victim's past sexual behavior and explicitly states that the victim and parties

---

[6] This is not to be confused with an *in camera inspection*, where a trial court independently determines whether documents requested in discovery are privileged. *See In re Nitla S.A. de C.V.*, 92 S.W.3d 419, 420 (Tex. 2002); *see also* Tex. R. Civ. P. 193.4(a).

have a right to attend and be heard. Fed. R. Evid. 412(c)(2). Although the language of the federal rule differs from the Texas rule 412, the Texas Rules of Evidence are patterned on the federal rules and we are guided by the federal rules in construing our own. *Potier v.* State, 68 S.W.3d 657, 662 n.28 (Tex. Crim. App. 2002).

Similarly, Texas Rule of Evidence 508(c)(3) provides for *in camera* disclosure of the identity of an informant. The rule specifies that all parties are to be present at every stage of the proceeding "except a disclosure in camera, at which no counsel or party shall be permitted to be present." Tex. R. Evid. 508(c)(3). If *in camera* meant the exclusion of the parties and counsel by definition, then the additional words excluding counsel and the parties would be superfluous.[7] *See Campbell v. State*, 49 S.W.3d 874, 876 (Tex. Crim. App. 2001) (In construing a statute, "we assume that every word has been used for a purpose and that each word, phrase, clause, and sentence should be given effect if reasonably possible.").

Furthermore, the ordinary definition of a hearing assumes the normal adversarial process that is a basic, long-established feature of our system of justice. Aspects of this adversarial process, such as the right to cross-examine adverse witnesses, are guaranteed by our state and federal constitution, as we discuss below. The adversarial nature of our judicial process also has deep roots in the English common law, from which America's founding fathers (and ultimately those of Texas) derived many of our constitutional principles. As Justice Scalia recently observed in *Crawford v. Washington*,

---

[7] We also note that the rule does not refer to the disclosure *in camera* as a hearing. *See* Tex. R. Evid. 508(c)(3).

10

> English common law has long differed from continental civil law in regard to the manner in which witnesses give testimony in criminal trials. The common-law tradition is one of live testimony in court subject to adversarial testing, while the civil law condones examination in private by judicial officers.

541 U.S. 36, ___ (2004) (citing 3 W. Blackstone, Commentaries on the Laws of England 373-74 (1768)).

We see nothing in rule 412(c)'s requirement of an "in camera" procedure that signals a departure from the characteristic adversarial nature of Texas "hearings" as we have historically known them. *Cf. Acker v. Texas Water Comm'n*, 790 S.W.2d 299, 301 (Tex. 1990) ("A statute is presumed to have been enacted by the legislature with complete knowledge of the existing law and with reference to it."). In particular, we believe that if the court of criminal appeals had envisioned an anomalous, European-style procedure of private judicial interrogation, it surely would have expressed such intent more explicitly when promulgating rule 412. Indeed, where the legislature and our higher courts have required such rare departures from traditional adversarial procedures, they have clearly stated so. *See* Tex. Fam. Code Ann. §33.003(k) (West 2002); Tex. Parental Notification R. 2.4(c).

Nor does the history of rule 412 suggest any such intent. We discussed rule 412 in *Cuyler v. State*:

> Rule 412 is derived from the "rape shield statute" enacted by the legislature in 1975.[8] Before the statute was enacted, sexual assault victims often found

---

[8] *See* Act of May 15, 1975, 64th Leg., R.S., ch. 203, § 3, sec. 21.13, 1975 Tex. Gen. Laws 476, 477-78 (amended 1983), *repealed by* Act of May 26, 1985, 69th Leg., R.S., ch. 685, § 9(b)(1), 1985 Tex. Gen. Laws 2472, 2474 (hereinafter "Former Rape Shield Statute"). The pertinent portion

11

themselves subjected to abusive, embarrassing, and irrelevant inquiries into their private lives, with the result that many sexual assault victims chose not to report the attack rather than face such questioning. Rule 412, like its predecessor statute, represents an explicit decision to eliminate trial practices that may have frustrated society's vital interest in the prosecution of sexual crimes.

841 S.W.2d 933, 936 (Tex. App.—Austin 1992, no pet.) (citation omitted), *overruled on other grounds by Halstead v. State*, 891 S.W.2d 11 (Tex. App.—Austin 1994, no pet.). The rationale behind rape shield laws was described by one court as follows:

[E]vidence of a rape victim's prior sexual activity is of dubious probative value and relevance and is highly embarrassing and prejudicial. Often such evidence has been used to harass the prosecuting victim. Sponsors of [rape shield] statutes assert that they encourage victims of sexual assault to report the crimes without fear of having their past sexual history exposed to the public.

*Bell v. Harrison*, 670 F.2d 656, 658 (6th Cir. 1982), *quoted in Allen v. State*, 700 S.W.2d 924, 929 (Tex. Crim. App. 1985). The notes of the advisory committee on the federal rule 412 also emphasize the protection of the victim from public humiliation:

The rule aims to safeguard the alleged victim against the invasion of privacy, potential embarrassment and sexual stereotyping that is associated with public disclosure of intimate sexual details and the infusion of sexual innuendo into the fact-finding process. By affording victims protection in most instances, the rule also encourages victims of sexual misconduct to institute and to participate in legal proceedings against alleged offenders.

---

of the former rape shield statute is nearly identical to rule 412(c) and provided: "After this notice [identical to that required by rule 412], the court shall conduct an *in camera* hearing, recorded by the court reporter, to determine whether the proposed evidence is admissible under Subsection (a) of this section." *Id.*

Fed. R. Evid. 412 advisory committee notes. Clearly, rule 412 was intended to address the disincentive for victims to report and prosecute sexual crimes because of the particular threat that the victim would have her sexual history publicly disclosed.[9] *See Allen*, 700 S.W.2d at 929.

This intent is achieved by ensuring that the court can first hear and evaluate the probity of evidence of an alleged victim's sexual history in a private setting before allowing that sensitive information to be interjected into the public domain. Excluding the parties does little if anything to advance this intent. The victim will still have to face the defendant when she testifies in open court on relevant matters and the testimony about the alleged victim's sexual history will presumably concern matters that counsel has already investigated.

Additionally, we are required, when possible, to construe the rules of evidence consistently with the constitution. Tex. R. Evid. 101; *see also* Tex. Gov't Code Ann. § 311.021 (West 1998); *Lebo v. State*, 90 S.W.3d 324, 329-30 (Tex. Crim. App. 2002). If rule 412 were construed to exclude the parties, it would, as explained below, violate the defendant's constitutional rights.

---

[9] We do not believe that the procedure proposed by James—allowing James's counsel to attend the *in camera* hearing and examine Kara—conflicts with the purpose of rape shield laws. Had the district court allowed James's counsel to examine Kara, the hearing still would have been "*in camera.*" That is, the *in camera* hearing would have "exclude[d] . . . the presence of any unnecessary spectators." *Wofford v. State*, 903 S.W.2d 796, 798 (Tex. App.—Dallas 1995, pet. ref'd); *see also* Fed. R. Evid. 412(c)(2) ("the court must conduct a hearing in camera and afford the victim and parties a right to attend and be heard"). All public spectators could have been removed from the courtroom, leaving only the parties, Kara, and the judge to participate in the hearing, with the court reporter recording the proceeding. The record would have been sealed, thereby exposing Kara's previous sexual conduct to only a handful of necessary persons, while preventing any undue *public* exposure.

13

**Constitutional Considerations**

### *Confrontation Clause*

The Texas Constitution provides that in all criminal prosecutions, the accused "shall be confronted by the witnesses against him." Tex. Const. art. I, § 10. This guarantee "has as its purpose the protection of an accused against processes of a secret and inquisitorial nature." *Id.* interp. commentary (West 1997); *see also Robertson v. State*, 142 S.W. 533, 543 (Tex. Crim. App. 1911) ("By our Constitution it is clearly made manifest that no man shall be tried and condemned in secret and unheard.").

The guarantee that a defendant in a criminal prosecution shall be "confronted by the witnesses against him" is a right also found in the United States Constitution. U.S. Const. amend. VI.[10] "The central concern of the Confrontation Clause is to ensure the reliability of the evidence against a criminal defendant by subjecting it to rigorous testing in the context of an adversary proceeding before the trier of fact." *Maryland v. Craig*, 497 U.S. 836, 845 (1990). Included in the right to confront adverse witnesses is the right to reasonable cross-examination. *Olden v. Kentucky*, 488 U.S. 227, 231 (1988) (citing *Davis v. Alaska*, 415 U.S. 308, 315-316 (1974)).[11] "[T]he exposure of a witness'[s] motivation in testifying is a proper and important function of the constitutionally

---

[10] The federal constitutional right to confront witnesses was made applicable to the states through the fourteenth amendment. U.S. Const. amend. XIV; *Pointer v. Texas*, 380 U.S. 400, 403 (1965).

[11] Notably, "trial judges retain wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on such cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness'[s] safety, or interrogation that is repetitive or only marginally relevant." *Delaware v. Van Arsdall*, 475 U.S. 673, 679 (1986); *accord Davis v. Alaska*, 415 U.S. 308, 316 (1974) (right to cross-examination is "[s]ubject always to the broad discretion of a trial judge to preclude repetitive and unduly harassing interrogation").

protected right of cross-examination." *Id.* (quoting *Davis*, 415 U.S. at 316-17). The Supreme Court recently explained in *Crawford* that the confrontation clause represents a choice, deeply entrenched in our law, that the reliability of testimony is to be determined through cross examination. *Crawford*, 124 S. Ct. at 1370 (confrontation clause is a procedural rather than substantive guarantee). The focus on cross examination is in recognition of the unique power of the adversarial process in reaching the truth. See *Lilly v. Virginia*, 527 U.S. 116, 124 (1999) (cross examination is the greatest legal engine for the discovery of truth ever invented); *California v. Green*, 399 U.S. 149, 159 (1970) (citing 5 J. Wigmore, *Evidence* § 1367 (3d ed. 1940)).

The rights to confrontation and cross-examination found in our state and federal constitutions were used to challenge the constitutionality of the former rape shield statute, the precursor to rule 412. In *Allen v. State*, the Texas Court of Criminal Appeals determined that the rape shield statute was constitutional on its face and as applied to Allen, who argued that the rape shield statute violated his right to confront adverse witnesses. 700 S.W.2d at 932. In so holding, the court stated:

> The constitutional right to confront adverse witnesses is fundamental and is of such importance that a State's interest in protecting a certain class of witnesses from embarrassment must fall before the right of confrontation and cross-examination. Thus a statute that purports to prohibit completely the introduction of the victim's consensual sexual activity with persons other than the defendant is unconstitutional unless given a judicial gloss requiring a hearing out of the jury's presence so that the defendant, upon motion, may be given an opportunity to demonstrate that due process requires the admission of such evidence because probative value in the context of that particular case outweighs its prejudicial effect on the prosecutrix.[12]

---

[12] Whereas rule 412 allows the introduction of evidence of an alleged victim's previous sexual conduct only under certain specified circumstances, the rule's statutory precursor was not as precise in explaining the type of evidence that could be admitted. The former statute provided:

*Id*.

Although the question of whether a defendant's counsel must be present at the hearing was never expressly addressed by the court of criminal appeals, our review of *Allen* and other case law persuades us that a trial court's failure to afford the parties the opportunity to be present at the *in camera* hearing and examine the alleged victim regarding specific instances of previous sexual conduct violates the defendant's confrontation rights. In *Allen*, the court of criminal appeals approvingly quoted *North Carolina v. Fortney*, 269 S.E.2d 110 (N.C. 1980), at considerable length. *Allen*, 700 S.W.2d at 930-931. In *Fortney*, the Supreme Court of North Carolina upheld the constitutionality of that state's rape shield law and wrote:

> If any question arises concerning evidence of a victim's prior sexual history, that question may be presented at an in camera hearing *where opposing counsel may present evidence, cross-examine witnesses and generally attempt to discern the relevance of proffered testimony in the crucible of an adversarial proceeding away from the jury.* In summary, then, [the North Carolina statute] merely contains and channels long-held tenets of relevance by providing a statutory definition of that relevance and by providing a procedure to test that definition within the context of any particular case. Defendant's substantive right to cross-examine is not impermissibly compromised.

*Fortney*, 269 S.E.2d at 116 (emphasis added), *quoted in Allen*, 700 S.W.2d at 931. The Texas Court of Criminal Appeals immediately followed its quote of *Fortney* by stating:

> (a) Evidence of specific instances of the victim's sexual conduct, opinion evidence of the victim's sexual conduct, and reputation evidence of the victim's sexual conduct may be admitted under Sections 21.02 through 21.05 of this code (rape, aggravated rape, sexual abuse, and aggravated sexual abuse) only if, and only to the extent that, the judge finds that the evidence is material to a fact at issue in the case and that its inflammatory or prejudicial nature does not outweigh its probative value.

Former Rape Shield Statute, sec. 21.13(a).

16

> While the North Carolina statute is not totally like [the Texas rape shield statute], it is similar in many respects and the language in *Fortney* is here instructive.
>
> "Of course rape shield statutes should not be used to exclude highly relevant evidence and violate the defendant's right of confrontation or other constitutional rights."

*Allen*, 700 S.W.2d at 930-31 (quoting *Bell*, 670 F.2d at 658).

The defendant's ability to have counsel attend the *in camera* hearing and examine the alleged victim is the exact safeguard that preserves the constitutionality of our rape shield rule. We therefore conclude that the confrontation clauses found in our federal and state constitutions require a trial court to afford the State, the defendant, and defense counsel the opportunity to attend the *in camera* hearing and examine the alleged victim out of the public eye.[13]

### *Right to the assistance of counsel*

The exclusion of the defendant and his counsel from an *in camera* hearing also implicates the right to the effective assistance of counsel. "In all criminal prosecutions, the accused shall enjoy the right . . . to have the Asistance of Counsel for his defence." U.S. Const. amend. VI;

---

[13] Our conclusion is consistent with numerous Texas cases where counsel evidently attended the *in camera* hearing. *See, e.g., Pinson v. State*, 778 S.W.2d 91, 92-93 (Tex. Crim. App. 1989); *Allen v. State*, 700 S.W.2d 924, 929 (Tex. Crim. App. 1985); *Kesterson v. State*, 959 S.W.2d 247, 248 (Tex. App.—Dallas 1997, no pet.); *Stephens v. State*, 978 S.W.2d 728, 734 (Tex. App.—Austin 1998, pet. ref'd); *Cooper v. State*, 959 S.W.2d 682, 684 (Tex. App.—Austin 1997, pet. ref'd); *Hughes v. State*, 850 S.W.2d 260, 262 (Tex. App.—Fort Worth 1993, pet. ref'd); *Simon v. State*, 743 S.W.2d 318, 323 (Tex. App.—Houston [1st Dist.] 1987, pet. ref'd). *But see Miles v. State*, 61 S.W.3d 682, 685 (Tex. App.—Houston [1st Dist.] 2001, pet. ref'd) (neither defense counsel nor prosecutor present at *in camera* hearing, but right to have counsel attend hearing not asserted at trial or on appeal; court of appeals ruled trial court improperly excluded evidence of previous sexual conduct and reversed and remanded case). The State has failed to cite, and we have been unable to find, a single Texas case where, over a party's objection, a trial court conducted an *in camera* hearing without counsel present.

*see also* Tex. Const. art. I, § 10. The Sixth Amendment right to counsel attaches upon the commencement of adversarial proceedings. *Kirby v. Illinois*, 406 U.S. 682, 688-90 (1972). "[T]he right to the effective assistance of counsel is recognized not for its own sake, but because of the effect it has on the ability of the accused to receive a fair trial." *U.S. v. Cronic*, 466 U.S. 648, 658 (1984). The right extends to all "critical stages" of the criminal proceeding, not just the actual trial. *Hidalgo v. State*, 983 S.W.2d 746, 752 (Tex. Crim. App. 1999). Whether a particular stage is critical turns on an assessment of the usefulness of counsel to the accused at the time. *Garcia v. State*, 97 S.W.3d 343, 347 (Tex. App.—Austin 2003, no pet.); *see Upton v. State*, 853 S.W.2d 548, 553 (Tex. Crim. App. 1993) (citing *Patterson v. Illinois*, 487 U.S. 285, 299-300 (1998); *United States v. Wade*, 388 U.S. 218, 235-39 (1967)); *see also United States v. Ash*, 413 U.S. 300, 313 (1973). Stated differently, whether a particular part of the trial process is a "critical stage" is determined not by whether the defendant suffered prejudice by the absence of effective assistance of counsel during that part of the proceedings, but rather, whether critical rights of a defendant can be lost at the stage in question. *Medley v. State*, 47 S.W.3d 17, 22 (Tex. App.—Amarillo 2000, pet. ref'd) (taking of evidence on defendant's guilt is critical stage) (citing *Herring v. New York*, 422 U.S. 853 (1975) (final summation); *White v. Maryland*, 373 U.S. 59 (1963) (preliminary hearing); *Hamilton v. Alabama*, 368 U.S. 52 (1961) (arraignment); *Ferguson v. Georgia*, 365 U.S. 570 (1961) (defendant entitled to present his testimony by questions from his attorney)).

The *in camera* hearing to determine the admissibility of evidence of an alleged victim's previous sexual conduct is a critical stage of the proceedings at which a defendant has the right to the assistance of counsel. In sexual assault cases, the credibility of the alleged victim could

18

well be the critical factor for the jury in determining the defendant's guilt. Here, James's defense was that the alleged sexual conduct in question was consensual. To present this defense, James sought to introduce evidence of the parties' previous sexual conduct to show that the details of the sexual activity at issue here were consistent with previous consensual sexual activity.

The district court's *in camera* procedure thwarted James's attempt to elicit such testimony from Kara. Because the district court prevented the State, James, and James's counsel from attending the *in camera* hearing, Kara's testimony regarding her previous sexual conduct was not subjected to the adversarial process meant to test its veracity. Refusing to allow the parties in a criminal proceeding to examine an alleged victim regarding her previous sexual conduct, albeit in an *in camera* hearing, undermines the defendant's ability to present a defense.

The State argues, without citing authority, that the *in camera* hearing was not a critical stage of the proceeding:

> In the *in camera* hearings conducted by the trial court during appellant's trial, the trial court asked all the questions of the witnesses. Neither appellant nor the State was allowed to be present. Therefore the proceeding was not adversarial. Nor was it an event at which appellant needed legal assistance, since he was not even present.

The State's argument *presupposes* that counsel is not required to be present at the *in camera* hearing. Moreover, the State's argument illustrates the precise reason why the district court should have allowed James's counsel to attend the hearing and examine Kara: the fact that the hearing was *not* adversarial and that James's counsel was *not* present denied to James the right to the effective assistance of counsel.

We conclude that denying James the right to have counsel attend the *in camera* hearing and examine Kara violated his right to confront witness and his right to the assistance of counsel.

**Remediable Error**

The district court's error in refusing to allow the parties to attend the *in camera* hearing to examine Kara and Kathleen Dunn would not necessarily require reversal if we could determine, based on our examination of the record and the relevant standard of harm analysis, that the error was harmless. However, the error itself prevented the development of a record from which we might determine the error's impact on the jury's verdict and punishment. Furthermore, the trial court's failure to conduct a proper hearing deprives this Court of a record on which we might properly consider James's contention that the trial court improperly excluded evidence of Kara's previous sexual conduct.

Rule 44.4 of the rules of appellate procedure states that a court must not affirm or reverse a judgment if the trial court's error (1) prevents the proper presentation of the appeal, and (2) the trial court can correct the error. Tex. R. App. P. 44.4(a). We note that abatement is utilized in a limited number of circumstances. *See Crosson v. State*, 36 S.W.3d 642 (Tex. App.—Houston [1st Dist.] 2000, order), disposition on merits, 2001 Tex. App. LEXIS 6049, No. 01-98-00297-CR (Tex. App.—Houston [1st Dist.] Aug. 30, 2001, pet. ref'd) (listing circumstances in which courts have abated criminal appeals). Rule 44.4 may not be utilized to avoid waiver or otherwise permit a party to do what that party failed to do in the trial court. *See* 43A George E. Dix & Robert O. Dawson, *Texas Practice: Criminal Practice and Procedure* § 38.121 (2d ed. West 2001).

Here, the district court's error in failing to allow the parties to be present and examine witnesses at the hearing pursuant to evidence rule 412(c) prevents our determination of whether the error was harmless because we simply cannot determine what evidence would have been elicited at an adversarial hearing. *See* Tex. R. App. P. 44.4(a)(1). For the same reason, the error prevents proper presentation of James's issue regarding the exclusion of evidence of Kara's previous sexual conduct. However, we find that the district court can correct the error by holding a proper hearing and again making a determination of what evidence would be admissible under rule 412. *See* Tex. R. App. P. 44.4(a)(2). Thus, we are compelled by the rules of appellate procedure, on this unique set of facts, to abate this appeal and direct the district court to hold a hearing that is consistent with rule 412(c) and this opinion.[14]

We specifically direct the parties' attorneys to contact the district court and set a hearing date in this case. The district court is directed to set the hearing for a date no later than 60 days after the date of this opinion. The public shall be excluded from the hearing, and the hearing shall be conducted either in chambers or in a closed courtroom. James, his attorney, and the representative of the State must be present and afforded a reasonable opportunity to examine the witnesses. *See Delaware v. Van Arsdall*, 475 U.S. 673, 679 (1986); *accord Davis v. Alaska*, 415 U.S. 308, 316 (1974) (right to cross-examination is "[s]ubject always to the broad discretion of a trial judge to preclude repetitive and unduly harassing interrogation"). Because James only sought to

---

[14] To the extent that James may object to the district court's determination regarding the admissibility of evidence under rule 412, the sealed record of the hearing will act as a bill of exception for our consideration of his claims.

21

question Kara and Kathleen Gann regarding prior sexual activity at trial, the hearing will be limited to those two witnesses.

After hearing evidence and argument by counsel, the district court shall determine whether the proffered evidence would be admissible under rule 412. A supplemental record from the hearing shall be sealed in accordance with rule 412(d) and sent to this Court no later than 120 days from the date of this opinion. Once the supplemental record is received, this Court will determine the merits of all of James's issues.

## CONCLUSION

The district court erred in refusing to allow James LaPointe, his counsel, and counsel for the State to attend the *in camera* hearing and examine Kara LaPointe and Kathleen Gann. This error is inconsistent with rule 412 and violated James's constitutional right to confront witnesses and his constitutional right to the assistance of counsel. Because these errors also prevented the proper presentation of the case to this Court, we abate the appeal and order the district court to conduct a hearing consistent with the directions set forth in this opinion.

_____

Bea Ann Smith, Justice

Before Justices Kidd, B. A. Smith and Pemberton;
    Justice Kidd Not Participating

Filed: April 28, 2005

Publish

22