# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

NO. 03-11-00667-CR

Kenneth Dale Wooten, Appellant

v.

The State of Texas, Appellee

FROM THE DISTRICT COURT OF LLANO COUNTY, 424TH JUDICIAL DISTRICT
NO. CR6288, HONORABLE DANIEL H. MILLS, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

A jury found appellant Kenneth Dale Wooten guilty of three counts of indecency with a child by contact. *See* Tex. Penal Code Ann. § 21.11(a)(1) (West 2011). The jury assessed punishment at fifteen years' imprisonment for the first two counts and twenty years' imprisonment for the third. On appeal, Wooten argues that (1) the trial court erred in denying his request to voir dire the State's expert, (2) the trial court denied Wooten his right to effective assistance of counsel, and (3) the evidence is insufficient to support his convictions. We affirm the judgment of the trial court.

## BACKGROUND

Wooten was a long-time family friend of the complaining witness in this case, "Jane."[1] In the years leading up to this alleged assault, Jane lived with her mother Misty and Jane's

---

[1] In order to protect the identity of the child victim in this case, we refer to the victim using a fictitious name, and refer to her adult family members by their first names.

older brothers. Wooten lived next door to Jane's family and would frequently babysit Misty's children when she was out of the house. Jane and Misty would later testify that Wooten paid more attention to Jane than to her brothers and would routinely take Jane shopping and buy her presents, but he would include her brothers only if prompted.

In January of 2010, then nine-year-old Jane went to her school guidance counselor's office and complained that her oldest brother threatened to rape her "if she didn't get out of his room and off his bed."[2] The guidance counselor would later testify that she noticed a bruise on Jane's arm, and when she asked Jane how she got the bruise, Jane said Wooten "grabbed her and he put it on there." At this point, according to the guidance counselor, Jane proceeded to make an outcry statement that she had "sexual contact" with Wooten on some unspecified date. *See* Tex. Code Crim. Proc. Ann. art. 38.072 (West Supp. 2011) (admitting hearsay statements made by child victim in certain circumstances).[3] Jane told her counselor that she was on the bed with Wooten watching television when he took her hand and placed it on his "private area, moved her hand up and down his private area, and then she had to put her mouth over him." After the outcry, the guidance counselor told Jane that Jane needed to tell her mother about this sexual contact. The guidance counselor noted that Jane was "really concerned" about telling anyone about the sexual contact because she did not want to get Wooten in trouble.

---

[2] The guidance counselor would later testify that during this session she did not ask Jane any follow-up questions about her brother's alleged threat, and the guidance counselor admitted she never contacted anyone about that allegation.

[3] We cite to the current versions of the statutes for convenience because there have been no intervening amendments that are material to our disposition of this appeal.

That evening, Jane told Misty that in November 2009, Wooten performed this alleged sexual contact while Misty was at the movies with friends. Misty testified that Jane told her that on that occasion, Wooten touched Jane on her chest and between her legs, then forced Jane to put her hand between his legs. Misty contacted Delbert, Jane's father, and told him about Jane's allegation. Delbert drove to Misty's home where he was joined by his two brothers, and the three men proceeded to confront Wooten at his home. Delbert would later testify that when he told Wooten about Jane's allegation, Wooten replied "so what, now you want to hit me?" The following day, Mike Betancourt, the supervisor of forensic services with the Williamson County Children's Advocacy Center, conducted a forensic interview of Jane.

Wooten was subsequently indicted for three counts of indecency with a child by contact and one count of aggravated sexual assault of a child.[4] *See id.* §§ 21.11, 22.021 (West 2011). At trial, the State called Jane's parents and guidance counselor, as well as investigators with the Lampasas County Sheriff's Office, who testified about the events outlined above. The State then called Jane to testify about the alleged incident, and she stated that Wooten touched her chest and "privates," then made her touch his privates and place her mouth on his privates. She further testified that Wooten showed her various pornographic pictures and videos and warned her that if she told anyone what happened she would not get to see him anymore.

---

[4] The three indecency-with-a-child charges allege that Wooten (1) touched Jane's genitals, (2) touched Jane's breast, and (3) caused Jane to touch his genitals. *See* Tex. Penal Code Ann. § 22.021(c) (West 2011) (defining "sexual contact" as touching "committed with the intent to arouse or gratify the sexual desire of any person"). The aggravated sexual assault charge alleged that Wooten caused Jane's mouth to contact his sexual organ. *See id.* § 22.021(a)(1)(B)(ii) (West 2011).

During his cross-examination of the above witnesses, Eddie Shell, Wooten's trial counsel, elicited testimony that Jane had a history of lying; that one year after she made her outcry against Wooten, Jane made an outcry that her oldest brother had been sexually abusing her for several years; and that Jane's narrative of the assault may have been influenced by repeatedly telling the story to several parties. The record appears to indicate that Mr. Shell's defensive theory was that Jane was not credible and that she may have fabricated the story about Wooten's assault to conceal her brother's ongoing assault.

Finally, the State called Betancourt to testify as an expert concerning child abuse victims' outcries generally and his impressions of Jane's interview specifically. Betancourt testified that children who are the victims of "interfamilial abuse"—abuse perpetrated by a person within the child's immediate family—tend to take longer to disclose the abuse, whereas they tend to disclose abuse committed by a person outside their immediate family sooner. Betancourt stated that there was nothing in Jane's interview that was different from his experience in interviewing abused children, with the implication that it was not inconsistent for Jane to first make an outcry against Wooten and then make an outcry against her brother months later.

After the State rested, Wooten called Jane's uncles—Delbert's brothers—to testify about Jane's character for truthfulness. Both uncles testified that Jane was "not very truthful," and one of the uncles also contradicted Delbert's testimony about what Wooten said on the night that Delbert confronted him. Following summations, the jury found Wooten guilty of three counts of indecency by contact, but found him not guilty of aggravated sexual assault. Following a punishment hearing, the jury assessed punishment at fifteen years' imprisonment for two of the offenses and twenty years' imprisonment for the third. This appeal followed.

## DISCUSSION

Wooten raises three issues on appeal. First, he claims that the trial court erred in not allowing Mr. Shell to conduct a voir dire hearing of Betancourt outside the presence of the jury. Second, Wooten argues that he was denied his right to effective assistance of counsel when the trial court entered a statement on the record while Wooten's counsel was not present. Third, Wooten asserts that the evidence is insufficient to support his convictions. We will address each of these appellate issues separately.

### Voir dire of expert

In his first issue on appeal, Wooten claims that the trial court erred in not allowing his trial counsel to voir dire Betancourt outside the presence of the jury. Specifically, Wooten asserts that rule 705(b) of the Texas Rules of Evidence gives a criminal defendant an absolute right to voir dire a State's expert on the underlying facts or data upon which the expert bases his opinion. Therefore, according to Wooten, the trial court erred in denying his request to conduct a voir dire examination of Betancourt at trial, regardless of whether defense counsel could have conducted the examination at a pretrial hearing.

Under rule 705(b), a criminal defendant, upon request, "*shall* . . . be permitted to conduct a *voir dire* examination directed to the underlying facts or data upon which the opinion is based." Tex. R. Evid. 705(b) (first emphasis added). The purpose of this rule is to give "defense counsel the opportunity to examine the foundation of the expert's opinion without fear of eliciting damaging hearsay or other inadmissible evidence in the jury's presence." *Alba v. State*, 905 S.W.2d 581, 587–88 (Tex. Crim. App. 1995). Rule 705(b) may also "supply defense counsel with sufficient

5

ammunition" to timely object to the admissibility of expert testimony. *Id.* "Because Rule 705(b) is mandatory, a trial court's denial of a timely and proper motion for such a hearing would constitute error." *Id.*

The State does not dispute the mandatory nature of rule 705(b), but instead asserts that Wooten failed to properly request a rule 705(b) hearing at trial, and thus this issue is not preserved for appeal. Generally, if a party fails to preserve an issue for appeal, this Court should not address the merits of that issue. *Ford v. State*, 305 S.W.3d 530, 533 (Tex. Crim. App. 2009). To properly preserve an issue for appellate review, the record must show that (1) the defendant timely presented the complaint to the trial court and (2) the trial court either ruled or refused to rule on the complaint. *See* Tex. R. App. P. 33.1(a)(1). The complaint must be sufficiently clear so as to provide the trial court and opposing counsel an opportunity to address the issue. *Ford*, 305 S.W.3d at 533 (citing *Lankston v. State*, 827 S.W.2d 907 (Tex. Crim. App. 1992)). "However, a party need not spout 'magic words' or recite a specific statute to make a valid objection," and a complaint is not defective merely because it does not cite a specific rule. *Id.*

At trial, the State asked Betancourt if he had "done any research or had any training on" whether a child-victim's process for disclosing abuse is affected by her relationship to the perpetrator. At that point, the following exchange occurred between Mr. Shell, the trial court, and Betancourt:

| Mr. Shell: | Judge, I would ask for a hearing outside the presence of the jury on his qualifications in this regard. |
|---|---|
| Court: | Mr. Betancourt, have you testified about this subject matter before? |

6

Betancourt:    Yes, sir.

Court:    I'm going to let you cross examine him, Mr. Shell. I'm going to overrule your objection. Go ahead.

Mr. Shell:    Just to be specific, the Court is overruling my motion to have a hearing outside the presence under the 700 Series rules?

Court:    Yes, sir. And the reason being that we could have raised this issue at a pretrial and taken it up not while the jury is sitting in the box. So you can challenge his testimony by your cross-examination. Go ahead.

The Texas Court of Criminal Appeals has held that requesting to voir dire an expert on his qualifications does not constitute a request to examine the underlying facts or data that form the basis of the expert's opinion under rule 705(b). *Jenkins v. State*, 912 S.W.2d 793, 813–14 (Tex. Crim. App. 1993). Thus, the court concluded that a defendant's request to voir dire an expert in order to "'prove up' his qualifications" does not preserve a rule 705(b) challenge for appeal. *Id.* at 814; *see also Shaw v. State*, 329 S.W.3d 645, 655–56 (Tex. App.—Houston [14th Dist.] 2010, pet. ref'd) ("A party's argument that the trial court failed to conduct a properly requested Rule 705(b) hearing is a distinct argument from one challenging the qualifications of an expert.").

It is not entirely clear from the court's opinion in *Jenkins*, 912 S.W.2d at 813–14, what a defendant needs to do in order to preserve a rule 705(b) challenge. The court's opinion could be interpreted to mean that a party requesting a 705(b) hearing must specifically cite that rule or at a minimum indicate that he wants to discuss the underlying facts and data that form the basis of the expert's opinion. *See id.* However, such an interpretation appears inconsistent with the general rule that a party need not recite "magic words" or cite specific statutes to preserve a complaint for appeal.

7

*Cf. Ford*, 305 S.W.3d at 533. Alternatively, the court's opinion could mean that when a party requests to voir dire an expert on his *qualifications*, the party at least impliedly does not request a rule 705(b) hearing because the underlying facts or data upon which an expert bases his opinion are not necessarily related to his qualifications as an expert. *See Jenkins*, 912 S.W.2d at 813–14. Nevertheless, it appears that Wooten's request to conduct voir dire did not meet the requirements of *Jenkins*, 912 S.W.2d 813–14, regardless of which interpretation of that opinion is correct.

In this case, Wooten's counsel asked to conduct a hearing as to Betancourt's qualifications, which the trial court denied. Wooten's counsel immediately specified that he was requesting a hearing outside the presence of the jury "under the 700 Series rules." There are only six rules in the 700 series of the rules of evidence, and only rule 705(b) discusses conducting a hearing outside the presence of the jury. *See* Tex. R. Evid. 701–06. However, the 700 series also includes rule 702, which relates to an expert's qualifications. *See id.* 702 ("[A] witness qualified as an expert by knowledge, skill, experience, training, or education may testify thereto in the form of an opinion or otherwise."). Thus defense counsel's statement that he was requesting a hearing under the 700 series could arguably be interpreted as another request to voir dire Betancourt on his qualifications. *See id.*

We acknowledge that this case presents a closer factual scenario than the one addressed in *Jenkins*, 912 S.W.2d at 813–14. Nonetheless, we cannot conclude that defense counsel's statement that he requested voir dire "under the 700 series" was enough to alert the trial court that counsel wanted to examine the underlying facts or data upon which Betancourt based his opinion specifically, rather than Betancourt's qualifications generally. Therefore, under the binding precedent established

8

in *Jenkins*, 912 S.W.2d at 814, we must conclude that Wooten has not preserved this complaint for appeal. Accordingly, we overrule Wooten's first issue on appeal.

**Absence of defense counsel**

In his second issue on appeal, Wooten asserts that the trial court denied him his constitutional right to effective assistance of counsel. Specifically, Wooten complains that the trial court made a statement on the record while Mr. Shell was not present, in which the trial court explained its earlier ruling not to allow Mr. Shell to voir dire Betancourt. According to Wooten, this statement outside the presence of defense counsel deprived Mr. Shell of an opportunity to "set the record straight" concerning Wooten's right to voir dire Betancourt.

"In all criminal prosecutions, the accused shall enjoy the right to . . . have the Assistance of Counsel for his defense." U.S. Const. amend. VI; *see also* Tex. Const. art. I, § 10. The right to the assistance of counsel attaches at all "critical stages" of the criminal proceeding. *United States v. Cronic*, 466 U.S. 648, 659 (1984); *Routier v. State*, 112 S.W.3d 554, 587 (Tex. Crim. App. 2003). A specific proceeding is a "critical stage" if "the accused required aid in coping with legal problems or assistance in meeting his adversary." *United States v. Ash*, 413 U.S. 300, 313 (1973); *see also LaPointe v. State*, 166 S.W.3d 287, 298 (Tex. App.—Austin 2005, pet. ref'd) ("Whether a particular stage is critical turns on an assessment of the usefulness of counsel to the accused at the time."). There is no bright-line rule for when a specific stage of a criminal proceeding is critical, and the particular circumstances of the specific proceeding must be considered. *See Wingfield v. State*, 197 S.W.3d 922, 926 (Tex. App.—Dallas 2006, no pet.).

9

In this case, before Mr. Shell cross-examined Betancourt, the trial court took a fifteen-minute break. During this break, the trial court made the following statement on the record, outside the presence of the jury:

> For the record—I'm going to just put a little thing on the record. I know Mr. Shell is not here, but Ms. Bunting is and Mr. Orbelo is here. This notice of the State's witness was filed September 15th, 2010. Number 13 was Mr. Betancourt was listed on September 15th of 2010 and the first time I see a notice being sent to Mr. Shell as the attorney of record was October 4th of 2010. And we then had a pretrial hearing on 11-22 of 2010, and no issues were ever presented and no motions were ever filed with reference to any challenges to the qualifications of any expert witness listed in that witness report. That's all I want to put on the record.

The record indicates, and the parties appear to acknowledge, that the trial court made this statement on its own volition, and the trial court did not solicit comments from the State or Ms. Bunting, whom the parties identify as Mr. Shell's legal assistant. It is not entirely clear why the trial court made this statement, given that its explanation of its evidentiary rulings does not affect this Court's resolution of issues on appeal. *See State v. Iduarte*, 268 S.W.3d 544, 548 (Tex. Crim. App. 2008) (noting appellate court will uphold trial court's evidentiary ruling if correct on any theory).

Nonetheless, Wooten asserts that the trial court's statement on the record was a critical stage of trial because had defense counsel been present, counsel could have "set the record straight." We take Wooten's argument to mean that had defense counsel been present, counsel could have clearly explained why he had the right to voir dire Betancourt under rule 705(b). This argument is not supported by the record.

10

The trial court's impromptu statement occurred *after* the State had conducted its direct examination of Betancourt. Thus, Wooten no longer had a right under rule 705(b) of the rules of evidence to voir dire Betancourt about the underlying facts and data upon which Betancourt based his opinion before he testified. *See* Tex. R. Evid. 705(b) (allowing party to voir dire expert "*prior to the expert giving the expert's opinion or disclosing the underlying facts or data*") (emphasis added); *Alba*, 905 S.W.2d at 588 (concluding trial court did not err in denying untimely request for rule 705(b) hearing when witness had already testified about underlying facts or data). Therefore, even if defense counsel had been present when the trial court made the statement, and even if counsel had clarified that he wanted to voir dire Betancourt under rule 705(b), that clarification would not have allowed Wooten to finally voir dire Betancourt.[5]

On this record, we cannot conclude that the trial court's statement was made during a critical stage of trial. *See LaPointe*, 166 S.W.3d at 298 (noting proceeding is critical stage if counsel would be useful to defendant at the time). At most, the proceeding could have afforded defense counsel an opportunity to make an offer of proof about what questions he would have asked Betancourt had he been allowed to conduct voir dire. However, defense counsel had the opportunity to make such an offer of proof at any time before the court delivered its charge to the jury. *See* Tex. R. Evid. 103(b). Thus, we cannot conclude that this particular opportunity to make an offer of proof constituted a critical stage of the proceedings such that the absence of counsel deprived Wooten of his constitutional rights. *See Ash*, 413 U.S. at 313. We overrule Wooten's second issue on appeal.

---

[5] In addition, the trial court's statement further demonstrates that it did not understand that Wooten's previous request to voir dire Betancourt was made under Rule 705(b).

11

**Sufficiency of the evidence**

In his third and final issue on appeal, Wooten asserts that the evidence is insufficient to support his convictions for indecency by contact. Specifically, Wooten claims that the State's entire case rested solely on the testimony or statements of Jane, and because Jane's credibility was significantly undermined, no reasonable jury could have found Wooten guilty based on her allegations.

In reviewing the sufficiency of the evidence to support a conviction, we determine whether a rational trier of fact could have found that the essential elements of the crime were proven beyond a reasonable doubt. *Brooks v. State*, 323 S.W.3d 893, 895 (Tex. Crim. App. 2010). In making this determination, we consider all evidence that the trier of fact was permitted to consider, regardless of whether it was rightly or wrongly admitted. *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007); *Allen v. State*, 249 S.W.3d 680, 688-89 (Tex. App.—Austin 2008, no pet.). We view this evidence in the light most favorable to the verdict. *Clayton*, 235 S.W.3d at 778. The jury, as the trier of fact, is the sole judge of the credibility of the witnesses and the weight to be given to their testimony. *Id.* Therefore, we presume that the jury resolved any conflicting inferences and issues of credibility in favor of its verdict. *Id.*

In this case, Jane testified that Wooten touched her chest; touched her "privates," which she identified as the part of girl's body between her legs; and forced her to touch his privates. Furthermore, Jane testified that Wooten made her move her hand "up and down" on his privates until a "clear white liquid" came out. This testimony alone is sufficient to support the jury's conclusion that Wooten committed the alleged contact with the intent to arouse or gratify his sexual desires. *See* Tex. Penal Code Ann. § 21.11 (defining indecency with child by contact); *Garcia v. State*,

12

563 S.W.2d 925, 928 (Tex. Crim. App. 1978) (holding that victim's testimony, standing alone, is sufficient evidence of penetration); *Lee v. State*, 186 S.W.3d 649, 655 (Tex. App.—Dallas 2006, pet. ref'd) ("The testimony of the child victim alone is sufficient to support a conviction for sexual assault."); *see also Bazanes v. State*, 310 S.W.3d 32, 37 (Tex. App.—Fort Worth 2010, pet. ref'd) (concluding jury could infer defendant's intent to arouse or gratify sexual desires from defendant's conduct alone).

Given that the jury convicted Wooten of three of the offenses alleged, we presume that the jury found Jane credible. *See Clayton*, 235 S.W.3d at 778. We defer to the jury's determinations of credibility. *Id.* Therefore, Wooten's complaint that Jane was not a credible witness leaves us with nothing to review. We conclude that the evidence is sufficient to support Wooten's convictions. We overrule Wooten's third issue on appeal.

## CONCLUSION

Having overruled Wooten's three issues on appeal, we affirm the judgment of conviction.

_____

Scott K. Field, Justice

Before Chief Justice Jones, Justices Goodwin and Field

Affirmed

Filed: April 24, 2013

Do Not Publish

13