**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Ioannis TZAKIS, Defendant-Appellant.**

**No. 958, Docket 83–1359.**

United States Court of Appeals, Second Circuit.

Argued March 20, 1984.

Decided June 11, 1984.

Henriette D. Hoffman, The Legal Aid Soc., Federal Defender Services Unit, New York City, for defendant-appellant.

Andrew J. Levander, Asst. U.S. Atty., S.D.N.Y., New York City (Rudolph W. Giuliani, U.S. Atty., S.D.N.Y., Paul Shechtman, Asst. U.S. Atty., New York City, of counsel), for plaintiff-appellee.

Before LUMBARD, NEWMAN and PRATT, Circuit Judges.

GEORGE C. PRATT, Circuit Judge:

Ioannis Tzakis appeals from a judgment of conviction entered in the United States District Court for the Southern District of New York after a jury trial before John M. Cannella, *Judge*. None of defendant's contentions on appeal warrants extensive discussion; we write this opinion primarily to address a novel claim concerning the imposition of restitution as a condition of probation under 18 U.S.C. § 3651 (1982). On that issue we conclude that the district court did not abuse its discretion by imposing joint and several liability on Tzakis and his codefendant, Melvin Hunter, for the full amount of restitution, rather than apportioning liability for restitution between

them. Rejecting defendant's other contentions as meritless, we affirm his conviction and sentence.

## BACKGROUND

Tzakis and his codefendant, Hunter, posing as successful international financiers, engaged in a series of schemes whereby they approached businessmen in need of substantial sums of money and convinced them to put up advance fees in reliance on promises to provide them with low interest loans. To induce the victims to part with their money, Tzakis and Hunter made fraudulent representations that they had access to billions of dollars and that they had previously funded many loan transactions. Defendants never provided a single loan to any of those who paid advance fees, and, although they had promised to refund the "advance" monies if the loans were not provided within 20 banking days, no advance fee was ever refunded. Hunter was the central figure in this fraudulent scheme, but Tzakis did participate extensively and he shared in its proceeds.

Soon after Hunter was arrested and incarcerated at the Metropolitan Correction Center in Manhattan, he made two long distance phone calls to Tzakis, who had not yet been arrested. Hunter arranged the calls through a fellow inmate, Robert Guccione, a prisoner awaiting sentence, who was eager to cooperate with law enforcement authorities. Acting on his own initiative, Guccione placed the calls through his wife, who would set up three-way conference calls among Hunter, Tzakis, and herself. Prior to making the arrangements for these calls, Guccione told Hunter that his wife would remain on the phone during the conversations in order to make sure he was still connected, and that she would be aware of what was said during these conversations. Hunter did not object to these conditions.

What Guccione did not tell Hunter was that he had directed his wife to record these conversations. After Hunter's calls had been taped for three days, Guccione told an FBI agent about the taped calls.

The agent instructed him to stop taping and to turn over any tapes that had already been made.

Tzakis, Hunter, and another codefendant were subsequently charged with eleven counts of wire fraud, in violation of 18 U.S.C. § 1343, eight counts of travel fraud, in violation of 18 U.S.C. § 2314, and conspiracy, in violation of 18 U.S.C. 371. At his arraignment on May 27, 1982, Tzakis was instructed by Judge Brieant, who handled the pretrial stage of this case, to file all appropriate pretrial motions by July 1, 1982. Through counsel he filed only one such motion—for discovery.

In October, Tzakis's original counsel withdrew from the case. Subsequently, Tzakis on a number of occasions guaranteed the court he would retain new counsel, but then repeatedly appeared in court without an attorney, always assuring the judge that next time he would appear with an attorney. On the morning of January 10, 1983, Tzakis, still unrepresented by counsel, called Judge Brieant's chambers from Chicago to say he might not be able to return to New York for that day's hearing because he "threw his back out". In Tzakis's absence, Judge Brieant went ahead with the scheduled hearing on the suppression motions filed by codefendant Hunter. Guccione testified at the hearing and was questioned by Hunter's counsel.

Tzakis next appeared in court on January 21, 1983, still without counsel. He was told that he must reappear on February 2 with counsel, or the court would re-examine his bail status. When Tzakis appeared on February 2, again without counsel, Judge Brieant temporarily revoked his bail. The next day counsel appeared for Tzakis and promised to file all pre-trial motions by March 1. Even that promise was not kept, however, for it was not until March 30 that Tzakis moved on various grounds to suppress the Hunter-Tzakis tapes. During argument of the motion on April 8, Tzakis's counsel suggested that the court reopen that hearing, mainly for the purpose of cross-examining Guccione further. The court declined to do so, concluding that

Hunter had a full and fair opportunity to cross-examine Guccione and that Tzakis had not given the court any reasons to justify recalling him.

Judge Brieant then denied the suppression motions, finding that Guccione was a credible witness and that he had told Hunter that his wife would be listening to Hunter's calls. Thus, the judge concluded, Hunter had consented to Mrs. Guccione's interception of the calls within the meaning of 18 U.S.C. § 2511(2)(d).

A two-week trial of both Tzakis and Hunter was then held before Judge Cannella. At the conclusion of the government's direct case, the prosecution moved to dismiss counts 7 and 12 of the superseding indictment. Both Tzakis and Hunter were convicted on the remaining counts, and Tzakis was sentenced to a total of seven years' imprisonment, consisting of concurrent two-year terms on counts 1 through 6, plus concurrent two-year terms on counts 8 through 11 to be served consecutively to the sentences imposed on counts 1 through 6, plus concurrent three-year terms on counts 13 through 19 to be served consecutively to the other sentences. The court also imposed a total of $90,000 in fines and ordered Tzakis to pay the costs of prosecution. On count 20, which charged a conspiracy to conduct the overall fraudulent scheme, the court suspended imposition of sentence, placing Tzakis on five years' probation to follow his consecutive jail sentences, and ordered, as a special condition of probation, that Tzakis pay restitution aggregating $400,000 to the five groups that had been victimized by the frauds.

Hunter's initial sentence on the same counts was for a study and report on his mental condition ordered pursuant to 18 U.S.C. § 4244. On April 2, 1984, after oral argument of this appeal, the district court imposed on Hunter a final sentence that was identical to the one imposed on Tzakis. Judge Cannella included the same condition for restitution to the victims, and he indicated that the total restitution liability of Tzakis and Hunter was $400,000, and that

their liability to the victims would be "joint and several".

On appeal Tzakis contends that the district court erred in failing to apportion the restitution liability between him and his more culpable codefendant; in denying his motion to suppress tapes of his telephone calls with Hunter; in refusing to reopen the suppression hearing for additional cross-examination; in failing to grant a judgment of acquittal on five of the counts for insufficiency of evidence; and in sentencing him to pay the costs of prosecution. We will discuss the restitution claim at some length and then consider briefly the other claims.

## RESTITUTION

Tzakis challenges that part of his sentence which requires him, as a special condition of probation, to make restitution in the amount of $400,000 to those people he and Hunter defrauded. Tzakis contends that because Hunter was more culpable than he, it was error for the court to make Tzakis jointly and severally liable for the full $400,000. Instead, Tzakis argues, the restitution sum should be apportioned and his share should be significantly lower than Hunter's. Additional arguments by Tzakis, based on the possibility that Hunter might not be ordered to make any restitution to the victims, were rendered moot by the district court's April 2, 1984 judgment that imposed on Hunter a restitution requirement identical to the one Tzakis contests.

Under 18 U.S.C. § 3651, a court may order a defendant to "make restitution * * to aggrieved parties" as a condition of probation, but only for the " 'actual damages flowing from the specific crime charged in the indictment of which the defendant is convicted * * * ' ". *United States v. Elkin*, 731 F.2d 1005, 1011 (2d Cir.1984) (quoting *United States v. Tiler*, 602 F.2d 30, 33 (2d Cir.1979)). There is no dispute over the total amount of actual damages, $400,000, caused by the crimes of which Tzakis and Hunter were convicted. Nor is there any dispute that the intended recipi-

ents, the victims who paid the advance fees, are "aggrieved parties" within the meaning of the statute. Tzakis's sole claim with respect to restitution is that a district court may not impose on two or more defendants joint and several liability for restitution ordered pursuant to § 3651, but instead must apportion restitution liability based on relative culpability.

On this issue the language of the statute does not help us, for it neither provides for nor precludes the imposition of joint and several liability on codefendants. In *United States v. Tiler, supra,* this court affirmed the imposition of joint liability for a particular restitutionary amount, but without any discussion of the propriety of doing so. Nor does the issue seem to have been addressed in other circuits.

 From a more general point of view, however, it is well established that a sentencing court has broad discretion in setting conditions of probation and that the validity of those conditions is reviewable only upon an abuse of discretion. *Fiore v. United States,* 696 F.2d 205, 207 (2d Cir. 1982); *United States v. Pastore,* 537 F.2d 675, 680–81 (2d Cir.1976). We do not think the district court in this case abused its discretion by imposing on Tzakis, as a condition of his probation, joint and several liability with Hunter for restitution of the full amount of the losses their joint crime caused.

Since Tzakis was convicted under count 20 for a conspiracy encompassing the entire fraudulent scheme, under § 3651 he can be required to make restitution for damage caused to all of the scheme's victims, which means in this case that he can be required to pay the full $400,000. *See United States v. Lemire,* 720 F.2d 1327, 1353 (D.C.Cir.1983), *cert. denied,* — U.S. ——, 104 S.Ct. 2678, 81 L.Ed.2d 874 (1984). While Judge Cannella in his discretion could have apportioned liability, *see id.* at 1354 n. 40, he was not required to do so. Even if Tzakis's role in the scheme was, as he claims, "comparatively minimal", any attempt to equate restitution for injury caused by criminal activity with liability for

damages cause by civil wrongs "ignores the state's important interests in rehabilitation and justice that are furthered by restitution." *United States v. Lemire,* 720 F.2d at 1353. Thus, while apportionment may now be required in some jurisdictions in civil tort suits, *see, e.g., Dole v. Dow Chemical Co.,* 30 N.Y.2d 143, 331 N.Y.S.2d 382, 282 N.E.2d 288 (1972); N.Y.Civ. Prac.Law § 1402 (McKinney's 1976), we decline to apply by analogy the same principle in criminal cases. We think the state's interests in justice and rehabilitation should allow the trial judge, in his discretion, to ignore degrees of culpability among codefendants when imposing restitution as a condition of probation under § 3651.

Moreover, should Tzakis be unable, due to indigency, to pay any or all of the $400,-000, he could not for that reason be subjected to additional punishment such as revocation of probation. *Bearden v. Georgia,* 461 U.S. 660, 103 S.Ct. 2064, 2070, 76 L.Ed.2d 221 (1983). And if the $400,000 should be fully paid, either by one defendant alone, or partly by one and partly by the other, the restitutionary conditions of probation imposed on both of them would have been satisfied.

## OTHER CONTENTIONS

### 1. *Suppression of Tapes*

 Tzakis contends that Judge Brieant should have suppressed the tapes of the Hunter-Tzakis telephone conversations because they violated his rights under 18 U.S.C. § 2511(2)(d). Judge Brieant found that Hunter consented to Mrs. Guccione's being on the line either all of the time or intermittently during Hunter's calls to Tzakis, and that her consensual right to listen also gave her the right to record the calls. Tzakis contends that Hunter had consented only to mechanical interception of the calls to insure that he remain connected, and that he had no expectation that Mrs. Guccione would listen to, much less tape, the substance of his conversations. Thus, Tzakis argues, Hunter did not "consent" to these interceptions within the

meaning of 18 U.S.C. § 2511(2)(d), which permits interceptions of wire or oral communications "where one of the parties to the communication has given prior consent to such interception * * *."

There is no authority for Tzakis's proffered distinction between "mechanical" and "substantive" interceptions. But even if such a distinction should exist, Hunter knew Mrs. Guccione would have to monitor his phone calls by listening in periodically, and he agreed to let her do so. Moreover, when she did break in and participate in the conversations, Hunter did not object. Thus, it cannot be said, as Tzakis argues, that Hunter consented only to "mechanical" interception of his calls. Since the district court's finding of consent to the interceptions is not clearly erroneous, we affirm the denial of Tzakis's motion to suppress the tape recordings of his telephone conversations with Hunter.

2. *Refusal to Reopen Suppression Hearing*

■ Tzakis next claims that he did not waive his right to be present and to have counsel present at the first suppression hearing held on January 10, and that the district court erred when it refused to reopen the suppression hearing and take additional testimony. Throughout the extended pretrial stage of this case, Tzakis engaged in dilatory tactics by failing to retain counsel in spite of repeated directions by the court that he do so. Tzakis knew that argument on his codefendant's suppression motion was scheduled for January 10, yet he made no effort to have counsel present at the hearing, nor did he, himself, attend. Instead, he placed a last minute phone call to Judge Brieant's chambers, explaining that he was in Chicago and would be unable to attend the hearing. Given Tzakis's course of conduct up to that point, and the fact that it was Hunter, not Tzakis's who had moved to suppress, we cannot say that the judge erred in proceeding with his consideration of the suppression motion in Tzakis' absence.

At the January 10 hearing the facts pertaining to the suppression motion were fully explored by Hunter's counsel. Moreover, the key issue—whether Hunter knew that Mrs. Guccione was listening to the calls—was solidly established by Hunter's own concession and by the tapes themselves. Although he argues that the court should have held a second evidentiary hearing after he obtained counsel, Tzakis does not point to any significant, new factual matters that would have been developed at such a hearing. Tzakis does point to an apparent conflict involving Hunter's counsel, but he has not demonstrated any specific reason why this conflict affected the course of the proceedings in any way to require reopening the suppression hearing. In the absence of any further factual developments that would have warranted a second evidentiary hearing, the district court was well within its discretion in refusing to reopen the hearing so that Tzakis's newly retained counsel could further cross-examine Guccione. *See United States v. Praetorius,* 622 F.2d 1054, 1061 (2d Cir.1979), *cert. denied,* 449 U.S. 860, 101 S.Ct. 162, 66 L.Ed.2d 76 (1980).

3. *Sufficiency of Evidence*

■ Tzakis also asserts that there was insufficient evidence to convict him on counts 4, 8, 11, 18 and 19. In reviewing such claims we must view the evidence in the light most favorable to the government, granting it all permissible inferences, and determine whether the jury rationally could conclude that the defendant was guilty beyond a reasonable doubt. *Glasser v. United States,* 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680 (1942).

Thus viewed, the evidence demonstrates that Tzakis aided and abetted Hunter in the schemes to defraud charged in counts 4, 11, 18 and 19. His telephone records indicated he had contact with many of the victims, some of whom he introduced to Hunter. He discussed these transactions extensively with Hunter, he helped Hunter set up bank accounts into which the advance fee moneys were deposited, and he shared in the scheme's proceeds. As to count 8, which involved a wire transfer of $49,000 to a co-conspirator, although there was no

evidence that prior to the transfer Tzakis knew how much would be transferred or by what means, the evidence did show that Tzakis helped set up the account used in the transfer, and that after Hunter was arrested, he instructed Tzakis to "tip off" the transferee that the transfer had indeed been made. From this, the jury was entitled to conclude that Tzakis had aided and abetted the wire transfer. An aider and abettor "need not have participated in every phase of the criminal venture." *United States v. Diecidue,* 603 F.2d 535, 557 (5th Cir.1979), *cert. denied,* 445 U.S. 946, 100 S.Ct. 1345, 63 L.Ed.2d 781 (1980).

### 4. Costs

As a final argument, Tzakis contends that the court's order requiring him to pay the costs of prosecution under 28 U.S.C. § 1918(b) is unconstitutional because of his indigency. We find no merit in this contention because at the relevant time, the time of sentencing, Tzakis did not claim to be indigent; on the contrary, he was still represented by retained counsel. Thus, the court did not abuse its discretion in imposing costs on him. *See United States v. Gering,* 716 F.2d 615, 626 (9th Cir.1983). Should Tzakis be unable, due to indigency, to pay these costs, the government simply would not be able to collect them, and it could not punish Tzakis further for his inability to pay. *Bearden v. Georgia,* 103 S.Ct. at 2070.

### CONCLUSION

For the foregoing reasons, we reject all of Tzakis's contentions on appeal and affirm his conviction and sentence.