# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-06-00066-CR

**Lorens San Pedro, Appellant**

**v.**

**The State of Texas, Appellee**

### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 331ST JUDICIAL DISTRICT
### NO. D-1-DC-2005-300182, HONORABLE CHARLES F. CAMPBELL JR., JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

A jury found appellant Lorens San Pedro guilty of aggravated sexual assault of a child and assessed punishment at ten years' imprisonment. *See* Tex. Penal Code Ann. § 22.021 (West Supp. 2006).[1]  In three points of error, appellant contends that the trial court erred in denying his request for certain offense reports, excluding evidence of the complainant's alleged prior sexual relationships, and admitting a recorded telephone conversation.  We affirm the conviction.

## BACKGROUND

Because appellant does not challenge the sufficiency of the evidence, we will briefly summarize the facts.  The evidence at trial showed that appellant, while working as a martial arts

---

[1]  Under the penal code, any intentional or knowing sexual contact with a person who is younger than 17 years old and not the spouse of the actor is sexual assault.  Tex. Penal Code Ann. § 22.011 (West Supp. 2006).  The same sexual contact is aggravated sexual assault when the victim is younger than 14 years old.  *Id.* § 22.021(a)(2)(B) (West Supp. 2006).

instructor, first met Y.C., the complainant, while she was a student at the school where he taught. In 2002, when Y.C. was 13 years old, appellant offered to give Y.C. weekly private lessons at no charge but told her not to tell anyone including her parents. Y.C. testified that she and appellant, who was 26 years old at the time, began a secret sexual relationship that lasted from February 2003 to November 2004. Y.C.'s parents, Po Chang and Jane Hsu, became suspicious after they learned of the private lessons and that appellant and Y.C. were e-mailing each other. Y.C. had also developed an eating disorder and had attempted suicide. When Chang and Hsu confronted appellant, he said Y.C. only had a crush on him. In April 2004, Hsu confronted appellant again, and he admitted that he had sex with Y.C. and wanted to marry her. On a separate occasion, appellant also admitted to Y.C.'s aunt that he had sex with Y.C. and wanted to marry her.

Y.C.'s parents called the police in April 2004, but when they arrived, Y.C. would not give them a statement. She told one officer that she just had a crush on appellant and, a couple days later, told another officer that they had only kissed on the cheek. In November 2004, Y.C. told a victim services counselor that she had sex with appellant, and in January 2005, she gave the police a statement in which she recounted sexual experiences with appellant spanning from the time they met in 1997 to 2004. Appellant was charged and indicted for aggravated sexual assault of a child, indecency with a child by contact, and indecency with a child by exposure. At trial, only the aggravated sexual assault charge was presented to the jury, which found appellant guilty.

**ANALYSIS**

In his first point of error, appellant asserts that the trial court erred in determining—after only a partial *in camera* review—that certain offense reports would not

2

be admissible and that the State need not provide them to appellant under *Brady v. Maryland*, 373 U.S. 83 (1963).

Under the Due Process Clause, the State has an affirmative duty to disclose evidence in its possession that is favorable to the accused and material either to guilt or punishment. *Id.* at 87; *Harm v. State*, 183 S.W.3d 403, 406 (Tex. Crim. App. 2006). *Brady* evidence includes both exculpatory and impeachment evidence. *United States v. Bagley*, 473 U.S. 667, 676 (1985). The test for materiality is whether there is a "reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *Ex parte Kimes*, 872 S.W.2d 700, 702 (Tex. Crim. App. 1993) (quoting *Bagley*, 473 U.S. at 676). A reasonable probability is one that is sufficient to undermine confidence in the outcome of the trial. *Id.* The alleged error is examined in the context of the entire record and overall strength of the State's case. *Thomas v. State*, 841 S.W.2d 399, 404-05 (Tex. Crim. App. 1992) (citing *United States v. Agurs*, 427 U.S. 97, 113 (1976)). The burden rests with the defendant to prove the error. *Id.* at 404 n.7.

On the day trial began, appellant filed an *ex parte* motion requesting an *in camera* review of certain offense reports that he alleged were *Brady* material. The judge examined nearly half of the reports during the lunch hour. After his partial *in camera* review of the offense reports, the trial judge determined that some of the material was *Brady* material and disclosed the substance of that material to appellant. Specifically, the judge disclosed that, prior to appellant's involvement with Y.C., Chang had been placed under a restraining order for "beating up" Hsu, an incident Y.C. claimed to have witnessed. On a separate occasion, Hsu had attempted to set fire to a couch "because she was frustrated about what was going on in her household." The judge also conveyed

3

that Y.C. had attempted suicide numerous times and had told the police variously that she had a "crush" on appellant but had not had sex with him, that she had a longstanding sexual relationship with appellant starting in 1997 when she was eight years old, and that she and appellant had only kissed on the cheek. The judge found nothing in the reports to indicate that Chang had any sexual interest in Y.C. The judge stated that he would review the remaining offense reports "when I can."

The State asserted that it had provided to appellant during discovery "a lot" of the *Brady* material described by the judge, including Y.C.'s conflicting statements regarding whether she had sex with appellant. Appellant stated that he was specifically seeking any offense reports reflecting family violence by Chang against Y.C. or Hsu and that he had not previously known about the protective order Hsu had received against Chang or that Y.C. had witnessed the incident resulting in the order. Appellant moved for a continuance, and the court took it under advisement. Two days later, at the charge conference, appellant requested a ruling on the motion for a continuance, and the court denied the motion.

Appellant raises two complaints regarding the exclusion of the claimed *Brady* material. First, appellant contends that the trial judge erred in failing to conduct a full *in camera* review of the alleged *Brady* material. Appellant, however, has failed to demonstrate that the trial court did not perform a complete review. While the record shows that a complete review was not accomplished on the first day of trial when appellant filed his motion, there is no indication in the record that the trial judge had not reviewed all of the material when he denied the motion for continuance two days later. We conclude that appellant has failed to preserve this contention for appellate review.

4

Second, appellant argues that "within the framework of an unstable home . . . with a showing of a previously violent father who pushed and prodded for an accusation against the defendant, the jury could have, with a reasonable probability, found that the accusations were made under duress, and thus alter the outcome of the trial." The trial court did disclose the family violence evidence to appellant; however, the disclosure occurred on the first day of trial. When evidence is disclosed at trial, the issue is whether the tardy disclosure prejudiced the appellant. *Little v. State*, 991 S.W.2d 864, 866 (Tex. Crim. App. 1999). To demonstrate prejudice, the appellant must show a reasonable probability that, had the evidence been disclosed to the defense earlier, the result of the proceeding would have been different. *Wilson v. State*, 7 S.W.3d 136, 146 (Tex. Crim. App. 1999).

During cross-examination of Y.C., the trial court permitted appellant's counsel to question Y.C. about her conflicting statements to the police and a victim services counselor, but ruled that the subject of family violence was irrelevant and inadmissible. When appellant later had the opportunity to cross-examine Y.C.'s parents, he did not again raise the issue or seek to question the parents about family violence.

To determine the effect of the excluded evidence, we examine the strength of the State's case. Y.C. testified that she and appellant had an ongoing sexual relationship, and she recounted the details of specific sexual encounters. Y.C.'s aunt and mother testified that appellant admitted he had sex with Y.C. and wanted to marry her. In addition, four people who had observed Y.C. and appellant together in public testified that Y.C. and appellant spent a lot of time together and "displayed a physical closeness"—Y.C. would lay her head in appellant's lap, and they would drape their arms around each other's shoulders. One of the four witnesses testified that during a trip

to an out-of-state tournament appellant and Y.C. expected to sleep in the same bed together, but were not allowed to do so; another testified that appellant told him that appellant wanted to marry Y.C.; and another testified that he saw appellant kiss Y.C. on the cheek and that he saw them occasionally "disappear[] for awhile and then reappear." The State also introduced the transcript of a tape-recorded conversation between Y.C. and appellant in which appellant stated, "I know I'm not perfect, um I know I've failed you, um a lot of times. Ah, I know that I've hurt a lot of people. . . . I want you to know that, um, no matter what has happened, . . . you know, I still love you." After examining the entire record and strength of the State's case, *see Thomas*, 841 S.W.2d at 404-05, we conclude that there is not a reasonable probability that earlier disclosure of the single incidence of family violence between Y.C.'s parents, which occurred two years before the relationship with Y.C. and appellant began, would have altered the outcome of this trial. We overrule appellant's first point of error.

### Rule 412

In his second point of error, appellant asserts that the trial court erred in preventing testimony and evidence regarding Y.C.'s alleged prior sexual relationships with third parties. Texas Rule of Evidence 412, the "rape shield law," governs the admissibility of a complainant's prior sexual conduct in a sexual assault case. Tex. R. Evid. 412. Specific instances of a victim's past sexual conduct are inadmissible unless (1) the evidence falls within one of five circumstances listed in rule 412(b)(2), and (2) the trial court finds that the probative value of the evidence outweighs the danger of unfair prejudice. *Id.*; *Boyle v. State*, 820 S.W.2d 122, 148

(Tex. Crim. App. 1989) (op. on reh'g). The court of criminal appeals has reasoned that the rationale behind such statutes

> is that evidence of a rape victim's prior sexual activity is of dubious probative value and relevance and is highly embarrassing and prejudicial. Often such evidence has been used to harass the prosecuting victim. Sponsors of these statutes assert that they encourage victims of sexual assault to report the crimes without fear of having their past sexual history exposed to the public.

*Allen v. State*, 700 S.W.2d 924, 929 (Tex. Crim. App. 1985) (quoting *Bell v. Harrison*, 670 F.2d 656, 658 (6th Cir. 1982)). We reverse a trial court's decision to exclude evidence of past sexual behavior only if the trial court abused its discretion. *Holloway v. State*, 751 S.W.2d 866, 870 (Tex. Crim. App. 1988); *Wofford v. State*, 903 S.W.2d 796, 799 (Tex. App.—Dallas 1995, pet. ref'd). A trial court abuses its discretion when its "decision was so clearly wrong as to lie outside that zone within which reasonable persons might disagree." *Cantu v. State*, 842 S.W.2d 667, 682 (Tex. Crim. App. 1991) (op. on reh'g) (citing *Montgomery v. State*, 810 S.W.2d 372, 391 (Tex. Crim. App. 1991)).

Rule 412(c) sets out the procedure for offering evidence of specific instances of a complainant's sexual behavior:

> If the defendant proposes to introduce any documentary evidence or to ask any question, either by direct examination or cross-examination of any witness, concerning specific instances of the alleged victim's past sexual behavior, the defendant must inform the court out of the hearing of the jury prior to introducing any such evidence or asking any such question. After this notice, the court shall conduct an in camera hearing, recorded by the court reporter, to determine whether the proposed evidence is admissible under paragraph (b) of this rule. . . .

7

Tex. R. Evid. 412(c).  It is clear from the rule that the purpose of the hearing is "to determine whether the proposed evidence is admissible" under one of the exceptions listed in section (b).  An *in camera* hearing allows the trial court to determine privately whether to admit any evidence of a complainant's past sexual behavior and limit any related questioning.  *Wofford*, 903 S.W.2d at 798.

During a recess that took place after a portion of the State's direct examination of Y.C., appellant requested that the court permit him to question Y.C. regarding a prior sexual relationship and asserted that the proposed testimony was admissible to show motive or bias.  *See* Tex. R. Evid. 412(b)(2)(C).[2]  Specifically, appellant stated that he wanted to ask Y.C. about a sexual relationship with the older brother of Y.C.'s close friend.  After a discussion of how that information related to appellant's theory of the case, the trial court denied appellant's request:

> [The Court]:      I don't see how that is relevant under Rule 412.
>
> [Defense counsel]:      Judge, the relevance is this.  The Defense's theory of facts is that the complaining witnesses' parents, specifically Po Chang, had learned of her sexual relationship with this boy and they confronted her about it.
>
> She did not want to have moral responsibility for that conduct on her shoulders, especially in the face of her violent father—one of the reasons why that material is Brady material.  And, given that, she had to choose—in order to shift moral responsibility off her own shoulders, she had to say that it was forced upon her.

---

[2] Appellant also argued that the proposed evidence was admissible because he otherwise would be deprived of his constitutional right to effective assistance of counsel.  *See* Tex. R. Evid. 412(b)(2)(E) (exception for evidence that is constitutionally required to be admitted).  Appellant does not present this ground on appeal.

The trouble was that she was a black belt in kung fu at that time, and so some boy who wanted to force himself on her would probably have a very difficult time doing so. But she could point the finger at somebody who had greater ability in kung fu than herself and say I didn't want to do that, he made me; and that, in fact, is what she said in an affidavit in support of the protective order.

That is the relevance, Your Honor.

[The Court]: How is the sex part relevant?

[Defense counsel]: The sex part is relevant because once the parents have confronted her about her sexual activity with this boy, then in order to admit that and yet nonetheless deny moral responsibility, she has to say it was forced upon me. I was raped. And that is, in fact, what she said in her affidavit in support of her protective order.

[The Court]: And instead she decides to pin it on this San Pedro guy over here because he has greater ability to kick her butt?

[Defense counsel]: Yes, Your Honor.

[The Court]: Oh, Jesus Christ, man. That is so farfetched that that would almost emasculate Rule 412. That is what the law is for, is to prevent stuff like that.

. . . .

[The Court]: No, I don't think that that exception to 412 applies to such a draconian fact situation.

[Defense counsel]: So the Court is denying an out-of-presence examination of the witness?

[The Court]: Yeah, I sure am.

(Recess)

[The Court]: We are going to assume for purposes of the record that if . . . [Y.C.] would testify, she would testify that she had sex with—what's the guy's name?

9

| | |
|---|---|
| [Defense counsel]: | There are several. [C.C.], a guy named Nick, I don't have his last name; and another named Ryan, don't have his last name. |
| [The Court]: | [C.C.], Nick, and Ryan. |
| [Defense counsel]: | Right. |
| [The Court]: | All right. Let the record so reflect. The objection is overruled. |

The court later stated that appellant's "explanation of how you get to bias is just so far out in left field . . . . It just doesn't make sense. Well, it makes sense, it's just that . . . it is not enough to overcome Rule 412 and the purpose of Rule 412." Appellant did not proffer any testimony corroborating his theory that Y.C. had a motive to falsely accuse appellant; thus, the only support for his theory could have come from Y.C. if she had testified at an *in camera* hearing. The trial judge, after hearing appellant's proposed testimony and theory of motive, did not conduct an *in camera* hearing.[3]

In *Young v. State*, a case decided shortly after Texas enacted its first rape shield statute, the court of criminal appeals upheld the exclusion of evidence of past sexual conduct even though the statutory procedures were not followed. 547 S.W.2d 23, 25 (Tex. Crim. App. 1977). The trial court in that case had not permitted the defendant to introduce specific instances of sexual

---

[3] This case is distinguishable from *LaPointe v. State*, 166 S.W.3d 287 (Tex. App.—Austin 2005, pet. denied), in which the trial court held an *in camera* hearing but excluded the parties and their attorneys from the hearing. This Court held that the "failure to afford the parties the opportunity to be present at the *in camera* hearing and examine the alleged victim regarding specific instances of previous sexual conduct violates the defendant's confrontation rights." *Id.* at 297. In this case, the defendant and his counsel were not excluded from any portion of the trial.

conduct, but had allowed him to preserve error on the issue through a bill of exception. *Id.*

On appeal, the court of criminal appeals stated that its holding was not to be used as precedent for

avoiding the requirements of the statute:

> The statutory proceedings outlined in that section should be followed in each case
> where the defendant proposes to introduce the evidentiary matters listed therein. We
> make an exception to those requirements in the case at bar only because the trial
> occurred shortly after the effective date of the statute, and because the trial court
> constructed a sufficient record for review of the issue.

*Id.* In *Wofford*, the Dallas court of appeals also found no reversible error in a trial court's failure to

conduct an *in camera* hearing. 903 S.W.2d at 800. In that case, the trial court during a bench trial

excluded testimony of the complainant's past sexual conduct, but permitted the defendant to preserve

the testimony by asking the complainant questions in open court rather than at an *in camera* hearing.

*Id.* at 799-800. The court concluded that the trial court erred in not holding an *in camera* hearing,

but that the defendant was not prejudiced by the error. *Id.* at 799.

In both *Young* and *Wofford*, the procedures followed by the trial courts created a

record of the excluded testimony. In this case, while we do not have a record of the actual excluded

testimony, we do know from the explanation of appellant's theory what he expected Y.C.'s

testimony to show. Also, the trial judge assumed for the record that Y.C. would have testified that

she had sex with each person named by appellant but still excluded the evidence because he

determined that the proffered instances of Y.C.'s prior sexual behavior were not relevant.

This Court has required that an appellant demonstrate a "definite and logical link

between the complainant's past sexual conduct and the alleged motive or bias under rule

11

412(b)(2)(C)." *Stephens v. State*, 978 S.W.2d 728, 735 (Tex. App.—Austin 1998, pet. ref'd). Evidence indicating that Y.C. had intercourse with someone other than appellant does not, by itself, tend to prove or disprove that she would fabricate sexual assault charges against the appellant. Moreover, the record includes compelling evidence of an actual sexual relationship between Y.C. and appellant. In addition to Y.C.'s testimony of specific sexual encounters with appellant, the evidence showed that appellant had admitted to a sexual relationship with Y.C., appellant told Y.C. he loved her, and several people observed that they were physically close and expected to sleep in the same bed together. In addition, appellant was permitted to impeach Y.C. with her conflicting statements to police and her admission that she had lied to her parents. We conclude that, even if the trial court erred in failing to hold the *in camera* hearing, such error was harmless on this record. *See* Tex. R. App. P. 44.2. We overrule appellant's second point of error.

### Recorded telephone conversation

In his third point of error, appellant asserts that the trial court erred in admitting the transcript of the tape-recorded telephone call between appellant and Y.C. because neither of them had consented to the recording. The conversation was recorded by Y.C.'s parents, who were listening on an extension telephone in another room. Y.C. testified that her parents allowed her to speak to appellant on the condition that they be allowed to listen; however, while she knew her parents were listening, she did not know at the time they were recording the conversation. The State initially offered both the tape and a transcript of the tape, but because of the poor quality of the tape, the judge suggested and the State agreed to enter only the transcript, which Y.C. testified accurately reflected the contents of the conversation.

12

Under the penal code, it is an offense when a person "intentionally intercepts, endeavors to intercept, or procures another person to intercept or endeavor to intercept a wire, oral, or electronic communication." Tex. Penal Code Ann. § 16.02(b)(1) (West Supp. 2006). It is an affirmative defense to this offense that

> a person not acting under color of law intercepts a wire, oral, or electronic communication, if:
>
> (A)      the person is a party to the communication; or
>
> (B)      one of the parties to the communication has given prior consent to the interception, unless the communication is intercepted for the purpose of committing an unlawful act.

*Id.* § 16.02(c)(4). Evidence obtained in violation of state law may not be admitted against the accused in a criminal case. Tex. Code Crim. Proc. Ann. art. 38.23 (West 2005). Because article 38.23 is mandatory, a judge has no discretion in ruling on the exclusion of evidence if the evidence was obtained in violation of a state statute or constitutional provision. *Polk v. State*, 738 S.W.2d 274, 276 (Tex. Crim. App. 1987). Because the Texas statutes addressing interception of communications are modeled on the federal anti-wiretap statute, *see* 18 U.S.C.A. § 2511 (West 2000 & Supp. 2006), it is appropriate to consider the interpretation of the federal statute in interpreting the Texas statutes. *Castillo v. State*, 810 S.W.2d 180, 183 (Tex. Crim. App. 1990).

Appellant argues that the recording violated penal code section 16.02 because neither he nor Y.C. consented to the recording. For the affirmative defense in penal code section 16.02(c)(4)(B) to apply, a party to the communication must have "given prior consent to interception." "Intercept" is defined as "the aural or other acquisition of the contents of a wire, oral,

or electronic communication through the use of an electronic, mechanical, or other device." Tex. Code Crim. Proc. Ann. art. 18.20, § 1(3) (West Supp. 2006); Tex. Penal Code Ann. § 16.02(a). Notably, the definition of "intercept" is broader than mere recording; it is characterized as an "aural or other acquisition." Thus, the language of the statute requiring "prior consent to interception" requires only consent to aurally acquire or listen in on a conversation.

This interpretation is consistent with the interpretation of the federal statute. The Supreme Court has observed that "[e]ach party to a telephone conversation takes the risk that the other party may have an extension telephone and may allow another to overhear the conversation. When such takes place there has been no violation of any privacy of which the parties may complain." *Rathbun v. United States*, 355 U.S. 107, 111 (1957). When an individual could properly testify to the contents of a conversation, a recording of that conversation is merely "the most reliable evidence possible." *Lopez v. United States*, 373 U.S. 427, 438-39 (1963); *see also Carnes v. United States*, 295 F.2d 598, 602 (5th Cir. 1961) ("[T]he only difference between a person testifying to a conversation which he participated in or overheard and a recording of the conversation is that the recording has the advantage of furnishing trustworthy evidence."). Under the federal wiretap statute, consent to listen in on a telephone call is consent to interception, and a tape recording of the conversation is admissible. *United States v. Tzakis*, 736 F.2d 867, 872 (2d Cir. 1984).

We conclude that, because Y.C. gave prior consent[4] to her parents to intercept her telephone call with appellant, the trial court did not err in permitting the State to enter a transcript of the conversation into evidence.[5] We overrule appellant's third point of error.

## CONCLUSION

Having overruled appellant's points of error, we affirm the judgment of the trial court.

_____

Jan P. Patterson, Justice

Before Justices Patterson, Pemberton and Waldrop

Affirmed

Filed:   February 27, 2007

Do Not Publish

[4] The parties do not contend that Y.C. was unable to consent because of her age.

[5] At trial, the State argued that Y.C.'s parents could vicariously consent to recording the telephone conversation. *See Pollock v. Pollock*, 154 F.3d 601, 610 (6th Cir. 1998); *Alameda v. State*, 181 S.W.3d 772, 778 (Tex. App.—Fort Worth 2005, pet. granted). Because we conclude Y.C. consented to her parents' interception of the call, we need not address appellant's assertion that Y.C.'s parents could not have consented on her behalf.