20-4036
*United States v. Campbell*

**UNITED STATES COURT OF APPEALS**
**FOR THE SECOND CIRCUIT**

# SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 9th day of March, two thousand twenty-two.

PRESENT:
        BARRINGTON D. PARKER,
        SUSAN L. CARNEY,
        BETH ROBINSON,
            *Circuit Judges.*

_____

UNITED STATES OF AMERICA,

      *Appellee,*

         v.                      No. 20-4036

HOWARD CAMPBELL,

      *Defendant-Appellant.*

_____

| | |
|---|---|
| FOR APPELLANT: | ALEXANDRA G. ELENOWITZ-HESS (Noam Biale, *on the brief*), Sher Tremonte LLP, New York, NY. |
| FOR APPELLEE: | KAYLA C. BENSING, Assistant United States Attorney (Amy Busa, Assistant United States Attorney, *on the brief*), *for* Breon S. Peace, United States Attorney for |

the Eastern District of New York, Brooklyn, NY.

Appeal from the United States District Court for the Eastern District of New York (DeArcy Hall, *J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment entered on November 19, 2020, is **VACATED**, the order entered on October 1, 2020, is **REVERSED**, and the case is **REMANDED** for further proceedings.

Defendant-Appellant Howard Campbell appeals from a judgment of conviction following a jury trial at which he was found guilty of one count of attempted possession with intent to distribute cocaine base. *See* 21 U.S.C. § 841(a)(1), (b)(1)(C), (b)(1)(D). Before trial, Campbell moved to suppress evidence recovered from his person during a search incident to his arrest. After a multi-day suppression hearing, the district court denied the motion, concluding that the testimony of the arresting officers, Officer Senra and Officer Ramos, along with other evidence, established that probable cause existed for Campbell's arrest and subsequent search. At trial, the government presented the narcotics evidence that Campbell had sought to suppress. After the verdict but before sentencing, Campbell moved to reopen the suppression hearing based on new evidence that, he contended, called into question the credibility of Officer Senra and Officer Ramos. The district court denied Campbell's motion to reopen, and on appeal, Campbell challenges that ruling. We assume the parties' familiarity with the underlying facts, procedural history, and arguments on appeal, to which we refer only as necessary to explain our decision to vacate the judgment, reverse the district court's denial of the motion to reopen, and remand for further proceedings.

We review a district court's decision granting or denying a motion to reopen a suppression hearing for abuse of discretion. *In re Terrorist Bombings of U.S. Embassies in East Africa*, 552 F.3d 177, 196 (2d Cir. 2008). "A district court has abused its discretion if it has (1) 'based its ruling on an erroneous view of the law,' (2) made 'a clearly erroneous assessment of the evidence,' or (3) 'rendered a decision that cannot be located within the

2

range of permissible decisions.'" *Manganiello v. City of New York*, 612 F.3d 149, 165 (2d Cir. 2010) (quoting *Sims v. Blot*, 534 F.3d 117, 132 (2d Cir. 2008)).

One potential basis for reopening a suppression hearing is that new evidence has come to light that seriously undermines or calls into question the court's original probable cause determination. *Cf. United States v. Tzakis*, 736 F.2d 867, 872 (2d Cir. 1984) (concluding that the district court acted "well within its discretion in refusing to reopen" a suppression hearing when the movant failed to "point to any significant, new factual matters that would have been developed at" a reopened hearing); *United States v. Oliver*, 626 F.2d 254, 260 (2d Cir. 1980) ("No new evidence of material significance was offered in support of the motion to reopen. The surrounding circumstances having thus been explored by the court, the decision not to reopen did not constitute an abuse of discretion."). Here, the district court's conclusions regarding the credibility of the government's key witnesses, which the court articulated for the first time at sentencing, constituted a potential ground for reopening the suppression hearing.

At the government's request, the district court articulated its reason for denying Campbell's motion to reopen. It explained that the newly presented evidence calling into question the arresting officers' credibility provided no basis to reopen because the officers' body camera footage and unspecified "other factors" supported its original finding of probable cause. The district court stated further that the video evidence "provided on its own[] a sufficient basis to establish probable cause for the search" and discounted the import of Officer Senra's testimony (in our understanding of the record) as not particularly "dispositive."[1] App'x at 1619–20. Although the government characterizes the district court's decision as "implicitly reaffirming its [prior] credibility determinations" as to the officers, Appellee's Br. at 50, the court's explanation makes clear that it believed evidence apart from the officers' testimony established probable cause. On review, we find that the district

---

[1] The district court explained, "I do not believe that—and I have to go back and read my ruling—I really do not believe that Officer Senra's testimony was particularly—was dispositive of the probable cause issue for the Court." App'x at 1620.

court's conclusions were erroneous and provided an inadequate basis for denying Campbell's motion.

The evidence that Campbell moved to suppress was located during a search of his person conducted by the officers incident to his arrest. Such a search may be conducted pursuant to a recognized exception to the Fourth Amendment's warrant requirement, where probable cause exists to make the arrest. *See Sloley v. VanBramer*, 945 F.3d 30, 37 (2d Cir. 2019). "Probable cause [to arrest] exists if a law enforcement official, on the basis of the totality of the circumstances, has sufficient knowledge or reasonably trustworthy information to justify a person of reasonable caution in believing that an offense has been or is being committed by the person to be arrested." *United States v. Gagnon*, 373 F.3d 230, 236 (2d Cir. 2004).

At the original suppression hearing, Officer Senra and Officer Ramos testified to seeing Campbell engage in what they believed to be a hand-to-hand drug transaction as they approached the scene in a police vehicle. The district court relied on this testimony to support its original probable cause finding and deny Campbell's suppression motion. The officers' body camera footage does not, however, show such a hand-to-hand transaction, but rather shows a man in a white tank top—an unidentified person whom the officers testified was the other party to the purported transaction—approach the driver's side of the police vehicle while holding a glass pipe. Shortly after, he shows the glass pipe and some cash to Officer Senra. The man makes several statements to Officer Ramos that are unintelligible in the video, and then says something further when approached by Officer Senra. The parties dispute exactly what he says to Officer Senra: in Campbell's view, the man says, "He didn't give me nothing" or "He didn't hand me nothing," whereas the government contends that "the audibility of the video evidence is not clear." Appellant's Br. at 12, 31–32; Appellee's Br. at 39. Either way, Officer Ramos can already be seen searching Campbell when the man makes the statement in front of Officer Senra.

The video evidence on its own, without the testimony of the officers, thus does not establish that probable cause existed before the search began. Although Officer Senra testified that the man said, "He didn't hit me off yet," indicating that a drug transaction had

4

been in progress, the government does not appear to contest that this statement is not audible in the recording. App'x at 59; Appellee's Br. at 39–40 (arguing that the court was entitled to rely on Officer Senra's testimony in this regard because the video evidence "does not . . . clearly capture the entirety of [the man's] statements to Officer Senra"). The only intelligible statement from the man in the white tank top that may come close to implicating Campbell in an actual or potential drug transaction occurs after Officer Ramos began his search, and thus could not have led the officers to believe Campbell had committed an offense at the time the search began.[2] *Cf. United States v. Freeman*, 735 F.3d 92, 96 (2d Cir. 2013) (in the context of a *Terry* stop, finding that "events that occur after a stop is effectuated cannot contribute to the analysis of whether there was reasonable suspicion to warrant the stop in the first instance").

The video evidence otherwise merely shows Campbell standing in the vicinity of the man, who is holding drug paraphernalia, and Campbell denying involvement with that man. "The sole fact that an individual as to whom the officers have no reasonable and articulable factual suspicion of wrongdoing happens to be in a public place where another person possesses a weapon or contraband does not provide a basis for" an investigatory stop, and certainly not for an arrest. *United States v. Jaramillo*, 25 F.3d 1146, 1152 (2d Cir. 1994). Additionally, although the fact that Campbell was in what the officers described as a "high crime area" may be relevant to the probable cause analysis, such a description without further elaboration does not have "significant probative value" on its own. *Freeman*, 735 F.3d at 101–02. Accordingly, contrary to the district court's conclusion, the credibility of the officers' testimony regarding the hand-to-hand transaction is dispositive of the probable cause issue.

---

[2] The government argues that statements by the officers on the video footage corroborate their testimony at the suppression hearing that they observed a hand-to-hand transaction by tending to show that it was not a post hoc justification. Whether true or false, such statements do little to support probable cause if the video evidence is considered "on its own," as the district court purported to do here. App'x at 1619. Additionally, Campbell's theory appears to be that the officers' investigation was bungled from the start. To the extent he is able to convince the district court that the deficiencies in the officers' investigation and their conduct at the scene "suggests some malfeasance" (in the district court's words) with the arrest overall, *id.* at 1613, the district court could reasonably conclude that such contemporaneous statements are themselves not credible.

The court's denial of the motion to reopen on the ground that the video evidence and other factors alone supported probable cause therefore constituted an abuse of discretion. And although the district court said that it did not rely on the officers' testimony in denying Campbell's motion to reopen, it also did not explicitly find that the officers were not credible on the subject of the hand-to-hand transaction. Campbell raises substantial reasons to doubt the officers' credibility, including that Officer Senra testified incredibly as to how a gun came to be located in Campbell's backpack at the precinct despite the fact that the officers thoroughly searched the backpack at the scene of the arrest; that Officer Ramos testified to finding an improbable amount of cocaine base in Campbell's underwear at the station; and that the officers may have had motives to testify falsely. Some of these matters came to light after the district court's original ruling on the suppression motion, and, on the record before us, we cannot be confident that the district court fully considered their implications.

Credibility determinations, however, are for the district court to make in the first instance and are entitled to "particularly strong deference." *United States v. Mendez*, 315 F.3d 132, 135 (2d Cir. 2002). We therefore decline Campbell's invitation to find at this juncture that the district court would clearly err by determining after a reopened suppression hearing that the officers' version of the events preceding Campbell's arrest is credible despite recent developments. The appropriate remedy for the district court's error, therefore, is to reverse the denial of the motion to reopen and remand for further proceedings. The district court should have the opportunity to address in the first instance the remaining open questions raised in this appeal, including whether the evidence discrediting the officers' testimony on other topics renders their testimony regarding the alleged hand-to-hand transaction no longer credible, and whether further analysis of the video footage, including audio studies, is necessary to decipher any relevant statements made before Officer Ramos began the search.

6

We have considered the parties' remaining arguments and find them to be without merit. The judgment of the district court is therefore **VACATED**, the order denying Campbell's motion to reopen the suppression hearing is **REVERSED**, and the case is **REMANDED** for further proceedings consistent with this Order.

FOR THE COURT:

Catherine O'Hagan Wolfe, Clerk of Court